**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **DOUGLAS E. WILLARD** | : |
| **DEBRA WILLARD** | : |
| **5403 Doral Drive** | : |
| **Wilmington, DE 19808** | : |
| | : |
| **WHITETAIL HOLDINGS, LLC** | : |
| **108 Stoney Battery Road** | : |
| **Earleville, MD 21919** | : |
| | : |
| *Plaintiffs,* | : |
| | : |
| | : |
| **v.** | : |
| | : |
| **KAREN KUNDA** | : |
| **148 Stoney Battery Road** | : |
| **Earleville, MD 21919** | : |
| | : |
| **ADAM KUNDA** | : |
| **148 Stoney Battery Road** | : |
| **Earleville, MD 21919** | : |
| | : |
| **WAYNE HOLMQUIST** | : |
| **THE VILLAGES** | : |
| **1795 Banberry Run** | : |
| **Lady Lake, FL 32162** | : |
| | : |
| **NANCY HOLMQUIST** | : |
| **THE VILLAGES** | : |
| **1795 Banberry Run** | : |
| **Lady Lake, FL 32162** | : |
| | : |
| **HACK'S POINT GENERAL STORE, INC.** | |
| **1444 Glebe Road** | : |
| **Earleville, MD 21918** | : |
| | : |
| **CECIL BANCORP, INC.,** | : |
| **D/B/A CECIL BANK** | : |
| **127 North Street** | : |
| **Elkton, MD 21922** | : |
| **Serve:      Mary Halsey** | : |
| **              Resident Agent** | : |
| | : |
| *Defendants.* | : |

## VERIFIED COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF,  AND DEMAND FOR JURY TRIAL

Plaintiffs, Douglas Willard, Deborah Willard and (hereinafter, "Willard"), by their attorney William F. Hickey III and the Law Office of William F. Hickey, hereby file this Complaint pursuant to Fed. R. Civ. P. 3, and sue Karen Kunda, Adam Kunda (hereinafter, "Kunda"), Wayne H. Holmquist and Nancy A. Holmquist,  Hack's Point General Store, Inc., and Cecil Bancorp., Inc., also doing business as Cecil Bank (hereinafter, "Cecil" or "Cecil Bank").

## PRELIMINARY STATEMENT

1.     This is a civil RICO action, alleging a pattern of corrupt racketeering activity and the commission of at least two predicate acts that constitute violations of 18 U.S.C. § 1962 (2008).  The gravamen of the Complaint that follows is:

2.     Defendant Karen Kunda operates or operated a country store called Hack's Point General Store, in Earleville, MD organized and incorporated as Hack's Point General Store, Inc. To augment her business's cash position, Ms. Kunda operated or operates several electronic poker and other gaming machines in the general store facility that generated thousands of dollars of illegal cash revenue monthly.  Ms. Kunda, with whom Plaintiff, Mr. Willard was formerly involved romantically, assured Mr. Willard verbally on several occasions that these gaming operations were perfectly legal, conducted in accordance with the laws of the State of Maryland. Mr. Willard, her romantic confidante at the time, believed Ms. Kunda's representations.

3.     While in relationship with Mr. Willard, commercial lines of credit Ms. Kunda had procured matured, becoming due and payable, such that Ms. Kunda needed to refinance her existing debt obligations. To this end, Ms. Kunda persuaded Mr. Willard to act as a guarantor on a line of credit extended by Defendant Cecil Bank, putting both his personal credit and real estate assets at risk.  To procure the line of credit, Ms. Kunda specifically deceived Mr. Willard and

failed to disclose on the loan application, that much of the revenue the store generated every month was illegal.  After offering his personal guarantee, however, Mr. Willard subsequently learned of the enterprise's patent illegality, broke off his relationship with Ms. Kunda, and informed Cecil Bank personnel that it was effectively being used as a depository for illegal cash proceeds of the General Store's gambling operation.  In June 2007, Mr. Willard sought to be removed as a personal guarantor of the General Store's unlawful business activities.

4.       Cecil Bank, however, rebuffed Mr. Willard's attempts to distance himself from the enterprise, hungry for the regular flow of cash proceeds the store deposited into its corporate accounts with Cecil Bank each month.   Not only did the Defendants Kunda induce the transactions by fraud:  with its enormous financial clout, influence in the community and appetite for securing loans through deeds of trust, Cecil Bank sought to turn the fraud to its advantage, turning a blind eye to the illegality of the General Store's cash-rich operation, to procure a security interest in Mr. Willard's highly desirable tract of agricultural land, real property that Mr. Willard acquired to prepare for residential development.

5.       As the allegations that follow demonstrate, the Defendants engaged in a pattern of activity within Cecil County, Maryland, to: a) acquire business financing while concealing the illegal nature of their business activities; b) induce the Plaintiff to enter the transaction by fraud, not only for the purpose of securing the commercial line of credit, but also to effectively ensure Mr. Willard's development enterprise was encumbered by the transaction, for the ultimate purpose of fostering acquisition of the developable land by Defendant Cecil Bank in a foreclosure action; c) enable the Defendant Cecil Bank to knowingly – at a certain point in time and upon information and belief - accept cash and check deposits from Defendant Kunda's illegal gambling operation to  unlawfully enrich itself.  As a matter of routine, Ms. Kunda's store

front, Hack's Point General Store, would negotiate personal checks for gambling clients to cash them, for customers to then feed the cash into the illegal gaming operations.   Defendant Cecil Bank is also alleged to have engaged in a widespread pattern of fraud, churning of mortgage purchase money and conflict-of-interest-riddled real estate transactions, in which it actively solicited sale of real estate it then provided the purchase money mortgage loan to finance.  That pattern of activity is identified in this case.

6.     The Defendants directly profited knowing there was a clear conflict of interest as well as patent fraud in these transactions.

7.     The said Defendants exercised control over the transaction by virtue of their fiduciary relationship; alternatively, they facilitated the transaction.

8.     The Plaintiff justifiably relied upon the Defendants to his detriment; and,

9.     Finally, the Defendants' frauds constitute a "pattern" of activity, because of the relationship of one predicate act to the other.  Further, the acts alleged in the instant complaint utilize interstate commerce, the federal mails, and wire communications to facilitate the Defendants' unlawful profiteering, in clear violation of 18 U.S.C. § 1962, other Maryland consumer protection statutes, and constitute the commission of common law torts.

## JURISDICTION AND VENUE

10.     Because the instant lawsuit raises questions arising under the laws of the United States, specifically under 18 U.S.C. § 1961 *et seq*., this Honorable Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 (2008); this Court has supplemental or pendent jurisdiction over the related state law claims and should exercise such jurisdiction pursuant to 28 U.S.C. § 1367 (2008).  Inasmuch as all of the relevant events recounted in this Complaint and all of the defendant actors perform their functions within the geographical boundaries of the State of Maryland, venue in the United States District Court for the District of Maryland is proper.

Further, because the real property at issue is located in this District and the events occurred in the District, venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 (b)(2) (2008).

## PARTIES

11.     The Plaintiff, Douglas E. Willard, is an adult individual and citizen of the State of Delaware, who currently resides at 5403 Doral Drive in Wilmington, DE 19808.  Mr. Willard currently owns a tract of agricultural land he has been attempting to prepare and market for residential development located in Cecil County, Maryland, which is the subject of a *lis pendens* action in the Circuit Court of Cecil County, captioned as *Karen Kunda et al., v. Douglas E. Willard*, No. 07-C-08-000283.  Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

12.     The Plaintiff, Debra Willard, is an adult individual and citizen of the State of Delaware, who currently resides at 5403 Doral Drive in Wilmington, DE 19808.  She   is   the spouse of the Plaintiff, Douglas Willard.  Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

13.     The Plaintiff, Whitetail Holdings, LLC (hereinafter, "Whitetail"), is a duly formed limited liability company in good standing, identified by the State of Maryland Department of Assessments and Taxation (hereinafter, "SDAT") registration ID number W10545663, with principal business address at 108 Stoney Battery Road in Earleville, MD 21919.  Whitetail is in good standing with SDAT as of the date of filing the instant complaint.  Mr. Willard is the managing member of Whitetail, which is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

14.     The Defendant, Karen Kunda, is an adult individual and citizen of the State of Maryland, who resides at 148 Stoney Battery Road, Earleville, MD 21919.  Ms. Kunda was

previously romantically tied to Plaintiff, Mr. Willard, and persuaded Mr. Willard – as set forth in greater detail, *infra* – to act as a guarantor on a commercial loan she procured from Defendant, Cecil Bank, by misrepresenting that she was operating gaming machines in accordance with the dictates of Maryland and federal law.  Defendant Kunda is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

15.     The Defendant, Adam Kunda, is an adult individual and citizen of the State of Maryland, who resides at 148 Stoney Battery Road, in Earleville, MD 21919.  Mr. Kunda is the spouse of Defendant, Karen Kunda, and is a "person," within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

16.     The Defendant, Wayne H. Holmquist, is an adult individual and citizen of the State of Florida, who resides at The Villages, 1795 Banberry Run, Lady Lake, FL 32162.  Mr. Holmquist is the step-father of Defendant Karen Kunda, and is a "person," within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).    Mr. Holmquist owns a tract of property adjoining Mr. Willard's property, and is a Plaintiff in the action stated above, captioned as *Karen Kunda et al., v. Douglas E. Willard*, No. 07-C-08-000283.

17.     The Defendant, Nancy A. Holmquist, is an adult individual and citizen of the State of Florida, who resides at The Villages, 1795 Banberry Run, Lady Lake, FL 32162.  Mrs. Holmquist is the adoptive Mother of the Defendant, Karen Kunda, and is a "person," within the meaning of 18 U.S.C. § 1961 *et seq*. (2008). Mrs. Holmquist owns a tract of property adjoining Mr. Willard's property, and is a Plaintiff in the action stated above, captioned as *Karen Kunda et al., v. Douglas E. Willard*, No. 07-C-08-000283.

18.     The Defendant, Hack's Point General Store, Inc., (hereinafter, "Hack's Point,") is a corporation formed and organized under the laws of the State of Maryland, with principal business address at 1444 Glebe Road, in Earleville, MD 21918.   The Defendant, Karen Kunda, is presently shown as the principal owner/operator of Hack's Point, which is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

## STATEMENT OF FACTS

19.     The allegations of ¶¶ 1-18 are incorporated by reference, as though set forth in full herein.   Plaintiff, Douglas E. Willard, was formerly in a romantic relationship with Defendant, Karen Kunda, who is and/or was the proprietor of Hack's Point General Store in October, 2006, at the time she was attempting to procure an operating line of credit for her enterprise from Defendant, Cecil Bank.   At the time of making application for said line of credit, Ms. Kunda sought five hundred seventy thousand dollars ($570,000.00) in financing to refinance existing obligations that had matured and were due.   The financial institution, however, valued the enterprise at only four hundred seventy thousand ($470,000.00) dollars, requiring Ms. Kunda to procure an additional personal guarantee and collateral of a co-signatory on the note, to secure the additional one hundred thousand dollars ($100,000.00) in financing.

20.     At the time, Ms. Kunda was involved in a romantic relationship with Mr. Willard, who owns a sizeable tract of developable agricultural waterfront real property in Cecil County, located in Earleville, Maryland.   Cecil Bank officials were specifically aware of Ms. Kunda's relationship with Mr. Willard, because a year earlier, in March of 2005, Mr. Willard learned of the availability of a piece of residential real estate that the owner, Thomas Vaughan, was attempting to sell, located at 23 Union Folly Road in Georgetown, MD 21930.  Mr. Vaughan, a member of the Board of Directors of Cecil Bank, in direct contact with Mr. Willard,

subsequently referred him to Cecil Bank in early 2005 to procure the mortgage purchase money, amounting to approximately $720,000.00.   Mr. Willard, therefore, was already an established customer of Cecil Bank in March, 2006, at the time Ms. Kunda was seeking to refinance her existing commercial obligation.

21.     Because of the relationship of trust Ms. Kunda enjoyed with Mr. Willard at the time, in October, 2006; because Mr. Willard was known to Cecil Bank officers as a highly valued customer; because Cecil Bank had direct knowledge that Mr. Willard had purchased a fifty-seven acre plot of prime Chesapeake farmland in calendar year 2000, land that the bank initially believed was not suitable for development; because the same Cecil Bank officers later learned that Mr. Willard had procured the necessary environmental and percolation studies to render the land suitable for residential development;  and because Cecil Bank also had direct knowledge of the cash-rich nature of the General Store's operations by virtue of Ms. Kunda's personal friendship with Mr. Vaughn's daughter, the bank's commercial lending division approached Mr. Willard in early 2006, to enlist his aid in procuring Ms. Kunda's commercial credit transactions, in the person of Anthony M. Moss, Vice President of the Commerical Lending Division.

22.     Subsequently, Mr. Willard agreed to act as a co-signer on the commercial line of credit the Defendant, Cecil Bank, had extended to Ms. Kunda's business enterprise, Hack's Point.  Mr. Willard executed the personal guaranty on the promissory note on or about May 22, 2006.  At the time of signing the promissory note, Mr. Willard was led to believe by Cecil Bank personnel that he was acting as a guarantor only for the additional $100,000.00 in financing deficiency Ms. Kunda could not secure with the value of her business enterprise.  In fact, on the same date, May 22, 2006, Cecil Bank procured a deed of trust against Mr. Willard's tract of

8

agricultural property located in Earleville, for the entire five hundred seventy thousand dollar ($570,000.00) face amount of the note.  After learning this fact, Mr. Willard sought disclosure of the loan documents and any related financing statement, which documents the Defendant, Cecil Bank, has consistently refused to disclose under a "borrower privacy" theory.  Mr. Willard subsequently procured a copy of the deed of trust, a true and correct copy of which is attached to this Complaint as Plaintiff's Exhibit "A."

23.    On or about April 25, 2007, Mr. Willard confronted Ms. Kunda about the illegality of the gambling enterprise she was carrying on with electronic gaming machines in the back room of the Hack's Point General Store.  In spite of the fact that Mr. Willard has procured specific evidence of gaming payouts from her store, Ms. Kunda, both verbally and in writing (in electronic mail messages) continued to persist in her representation that operation of the gambling machines was within the parameters of the law.  Copies of the said electronic mail messages are attached to this Complaint, as Plaintiff's Exhibit "B."

24.    Mr. Willard subsequently broke off relations with Ms. Kunda on or about December 5, 2006, and contacted the appropriate regulatory authorities in early 2007, including the Comptroller of Maryland, who instituted an investigation of Ms. Kunda's enterprise's illegal gambling operation.  *See*, Electronic Mail of Earle Fowlkes to Debra Willard (May 19, 2009)(on file with the author).  Mr. Willard was subsequently contacted by Counsel for Ms. Kunda, E. Ellis Rollins, Esq., on or about August 15, 2008, who demanded that Mr. Willard cease and desist contact with the appropriate enforcement authorities.

25.    In May, 2008, Mr. Willard contacted Cecil Bank Officer Anthony Moss, to specifically inform the bank it was receiving cash deposits from an illegal gaming operation which were the product of Ms. Kunda's general store enterprise.  Mr. Moss sought to impeach

the credibility of Mr. Willard's information, explaining to Mr. Willard that dissemination of information about Ms. Kunda's illegal gambling enterprise might constitute "interference" with the Bank's contractual relations; and, that because of the high revenue stream and regularity of cash deposits from the Hack's Point enterprise, Cecil Bank considered Ms. Kunda's enterprise a highly valued customer.

26.    Summarily, Ms. Kunda, through her attorney E. Ellis Rollins, Esq., instituted the *lis pendens* action against Mr. Willard identified in ¶ 7, *supra*, to coerce Mr. Willard into silence about the inherent illegality of her activity and his execution of the promissory contract into which he had been induced by her misrepresentation. The *lis pendens* action had a coercive effect, by creating a cloud over title to Mr. Willard's real property, making sale of sub-divisible lots in the plat either impracticable or impossible.

27.    Defendant Cecil Bank has instituted foreclosure proceedings against Mr. Willard on or about February 5, 2010, as the holder of a deed of trust on Mr. Willard's property, for a debt Mr. Willard allegedly owes Cecil Bank – at least, in part - on a note the Bank refuses to disclose to him, for a guaranty made on an obligation that was procured by misrepresenting the legality of Hack's Point business operations.  The basis of the foreclosure is not immediately apparent to the Plaintiff, inasmuch as he has not – as of the date of this filing – been served with the foreclosure papers.

## SUBSTANTIVE ALLEGATIONS AND CLAIMS FOR RELIEF

**First Predicate Act:**

28.    The allegations of ¶¶ 1-27 are incorporated by reference herein, as though stated and set forth in full.  As early as March, 2006, and possibly earlier, the Defendant Karen Kunda, attempting to procure commercial financing from the Defendant, Cecil Bank, committed fraud

by misrepresenting to the Plaintiff, Douglas E. Willard, that her business operations were legal. She failed to disclose that a significant portion of the proceeds of her business – reported to be in the thousands of dollars each month – were generated by illegal electronic gaming activities, and thereby fraudulently induced the Plaintiff, Douglas E. Willard, to enter into a contract as a co-signatory to guarantee her line of credit.

29.     As a result of her fraudulent inducement, Plaintiff Willard actually executed the promissory contract, pledging his personal credit and real property assets as security for the note.

**Second Predicate Act:**

30.     The allegations of ¶¶ 1-29 are incorporated by reference herein, as though stated and set forth in full.  Defendant Cecil Bank, with the intent to defraud Plaintiff Willard and to procure his real property by such fraud, deceptively understated the extent of Mr. Willard's financial obligation to the institution, representing that he was obligated to the bank for only one hundred thousand dollars ($100,000.00), representing the difference between the line of credit Ms. Kunda had applied for, that amount being five hundred seventy thousand dollars ($570,000.00), and the amount for which she could independently qualify with the value of her business enterprise securing the note, which amount was four hundred seventy thousand dollars ($470,000.00).

31.     When the Plaintiff requested disclosure of the commercial note loan documents in May, 2007, the Defendant, Cecil Bank refused to comply with his request.

32.     Because the Defendant, Cecil Bank, refused to disclose the documents in question, Plaintiff Willard reasonably believes that the Defendant, Cecil Bank, altered the loan documents to fraudulently reflect his obligation on the note at $570,000.00, rather than the credit

"gap" of $100,000.00, to procure a deed of trust against his real property for the far higher amount.

**Third Predicate Act:**

34.     The allegations of ¶¶ 1-33 are incorporated by reference herein, as though stated and set forth in full.

35.     After receiving specific information that the Defendant, Karen Kunda, had failed to disclose relevant information about the illegality of her business operations, from the Plaintiff, Mr. Willard, Defendant, Cecil Bank, failed and refused to conduct a reasonable inquiry, to notify the appropriate regulatory authorities of what - ostensibly – was a patent fraud against federally-insured monies, in violation of 18 U.S.C. § 1104.

36.     Instead, the Defendant, Cecil Bank, expressed its preference for protecting the operation of Hack's Point, considering it a rich source of cash deposits, to the exclusion of conducting a reasonable inquiry into the legality of Defendant Kunda's loan application and the illegal quality of cash deposits it was receiving, because it has encumbrance of the Plaintiff's real property, and the enforcement mechanism of foreclosure available, as a facile means to ensure it effects recovery of the loaned proceeds under Hack's Point's note.

**Fourth Predicate Act:**

37.     The allegations of ¶¶ 1-36 are incorporated by reference herein, as though stated and set forth in full.

38.     The Defendant, Cecil Bank, knowingly and approvingly accepted the deposit of funds acquired through illegal gambling activity, and – as such – has become a vehicle for laundering such illegal cash proceeds, which activity continues to the date of filing the instant Complaint, upon information and belief.

**Fifth Predicate Act:**

39.     The allegations of ¶¶ 1-38 are incorporated by reference herein, as though stated and set forth in full.

40.     The Defendant, Cecil Bank, aware that Mr. Willard possessed highly desirable developable land, and aware that Mr. Willard was romantically tied to Ms. Kunda, conspired to interfere with Mr. Willard's development and sale of the real property asset, by procuring Ms. Kunda's commercial loan business.

41.     The Defendant, Cecil Bank, then understated the value of Ms. Kunda's enterprise, knowing that she enjoyed a confidential relationship of trust with Mr. Willard, and would require a co-signer on a half-million dollar line of credit for her commercial enterprise, "Hack's Point." Defendant Cecil Bank's role in the transaction was to understate the value of the enterprise, to create the artificial need to secure the line of credit with Mr. Willard's real property assets.

42.     Defendant Kunda's role in the transaction was to induce Mr. Willard to enter into the guaranty obligation by fraud, by both understating and misrepresenting the true character of her business.  Defendant Kunda also arguably initially deceived Defendant Cecil Bank of the character of her business; however, even when specifically advised of the illegal nature of her business activity, Defendant Cecil Bank remained intractably committed to backing Ms. Kunda's business enterprise.

**Relationship of First, Second, Third, Fourth and Fifth Predicate Acts to One Another: The Defendants' Fraudulent Scheme**

43.     The allegations of ¶¶ 1-42 are incorporated by reference herein, as though stated and set forth in full.

44.     The first, second, third, fourth and fifth predicate acts bear a demonstrated relationship to one another, inasmuch as the procurement of financing by the Defendant financial institution, Cecil Bank, was the initial goal of the Defendant, Ms. Kunda; misrepresentation of the source of her business proceeds was a means of inducing the Plaintiff, Mr. Willard to act as guarantor for her business loan; and the Defendant, Cecil Bank considered retention of the Defendant Kunda's illegal, liquid cash proceeds preferable to reporting the activity to federal regulators and investigators, because through alteration of loan documents, it has fraudulently secured its loan interest in the Plaintiff's highly desirable interest in real property in Earleville, MD; there is testimonial evidence that Defendant Adam Kunda regularly communicates with officers of Cecil Bank for the purpose of procuring its agreement to acquiesce to the illegality of Ms. Kunda's operation, because, as her husband, he has also designs to adversely possess a piece of Mr. Willard's property, for his own commercial use.

### COUNT I – RICO CLAIM UNDER 18 U.S.C. § 1962(d)

45.     The allegations of ¶¶ 1-44 are incorporated by reference herein, as though stated and set forth in full.

46.     Defendant Karen Kunda's role in the conspiracy was to procure, through her romantic involvement with Willard, his agreement to act as a guarantor for her commercial loan, and to create a securitized obligation against which the Defendant, Cecil Bank, could leverage the Plaintiff's interest in the real property in Earleville, MD.

47.     The Defendant Adam Kunda's role in the conspiracy was, as a former Maryland State Trooper, to lend the credibility of law enforcement to the illegal gambling operation and to ensure the security and "secrecy" of the operation.  Kunda's role in the conspiracy was also to ensure that criminal associates were paid and cash proceeds accounted for and distributed with

no detection by law enforcement.   Finally, Kunda's role in the conspiracy was to be the communication conduit between Ms. Kunda and Cecil Bank, to facilitate the transfer of the illegal cash and act to promote Cecil's interest in procuring Mr. Willard's unimproved agricultural land.

48.   The Defendant Cecil Bank's role in the conspiracy was to provide a depository institution to "launder" the illegally procured cash proceeds from the unlawful electronic gaming operation; and, to pressure Mr. Willard with foreclosure to procure his interest in the land, to satisfy both Ms. Kunda and Mr. Kunda's interest in seizing a small tract of land from Mr. Willard's land of approximately an acre, which the Defendants Kunda needed for a commercial bussing enterprise they operate on their property.

49.   Use of the United States mails or wire services to process loan applications, facilitate loans, and the use of interstate federal banking system to launder illegal gambling proceeds constitute violations of 18 U.S.C. §§ 1341 and 1343, and, both separately and in the aggregate, constitute a scheme to defraud.   In the process of committing these acts, the Defendants committed more than two, substantive predicate acts, related to one another, and committed within the past ten (10) years, as defined by 18 U.S.C. § 1961(1), thereby constituting a pattern of racketeering activity as defined by 18 U.S.C. § 1961(1).

50.   The enterprise in which the Defendants are engaged either occurs in, or affects, interstate commerce, which utilize the instrumentalities of the federal mails and wire services of some sort to approve and initiate the mortgage loans at issue and to engage in banking activities.

51.   The Plaintiffs were injured in their property by the Defendants' actions committed in furtherance of their conspiracy, to deprive them of their share of the true value of their real property.

52.     Thus, the Defendants, Kunda, Hack's Point and Cecil Bank, therefore, are jointly and severally liable for the commission of the said acts, in furtherance of their conspiracy.

**WHEREFORE,** PIaintiffs, Douglas and Debra Willard, respectfully pray this Honorable Court for the following relief:

a)      An award of compensatory damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

b)      An award of reasonable attorney's fees, costs, and other expenses, including expert and other discovery-related fees and expenses;

c)      An award of treble damages in the amount of three million dollars ($3,000,000.00) where authorized by statute;

d)      An award of punitive damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

e)      A preliminary injunction and command from this Honorable Court, that the Defendants Kunda, Hack's Point and Cecil Bank be enjoined to cease and desist their unlawful gambling and foreclosure activities against the Plaintiffs and that illegal gambling activities and unlawful cash proceeds of the Hack's Point business enterprise be attached or seized;

f)      A preliminary injunction and command from this Honorable Court that the Defendant, Cecil Bank, be enjoined from commencing or sustaining foreclosure proceedings against the Plaintiff, Douglas E. Willard and Debra A. Willard, and their business interest in Whitetail Holdings, LLC, which will sustain irreparable harm without such relief;

g)      Such other and further relief as their cause, this Honorable Court's discretion, and

the interests of justice permit or require.

## <u>COUNT II – CIVIL CONSPIRACY</u>

53.     The allegations of ¶¶ 1-53 are incorporated by reference herein, as though stated

and set forth in full.

54.     Sometime in May, 2006, the Defendants Hack's Point, Kunda, Holmquist and the

Defendant Cecil Bank entered into an agreement, the actual purpose of which was to deprive Mr.

Willard of his interest in land, by securing his personal guaranty on a line of credit extended by

Defendant Cecil Bank to Ms. Kunda.

55.     Thomas Vaughan is a member of the Board of Directors of Cecil Bank, who

initially referred Mr. Willard to Cecil Bank to procure mortgage purchase money financing in

April, 2005, to finance Mr. Willard's purchase of Mr. Vaughan's home at 23 Union Folly Road,

Georgetown, MD 21930,, which was then on the market.  Mr. Vaughan's daughter, Lisa, and

Ms. Kunda, are close friends and confederates.  As a result of their friendship and Mr. Willard's

election to purchase Mr. Vaughan's residential property through purchase money mortgage

financing with Defendant, Cecil Bank, Defendant Cecil Bank learned of Mr. Willard's eventual

purchase of the undeveloped tract of agricultural land in question, and devised a plan to acquire

it, by – in part - encumbering it with Ms. Kunda's commercial loan guaranty.

56.     Mr. Anthony Moss solicited Mr. Willard to procure Ms. Kunda's commercial loan

business, understanding they were romantically linked.

57.     Defendant Cecil Bank intentionally understated the value of Ms. Kunda's

business enterprise, specifically to require a secondary guaranty on the note, particularly aware

that Mr. Willard and Ms. Kunda were involved romantically.

58.     Throughout the course of their relationship, but specifically from December, 2002, through December, 2006, Ms. Kunda misrepresented the illicit nature of her business enterprise.

59.     In May, 2008, having learned of the illicit nature of the operation, Defendant Cecil Bank subsequently misrepresented the illicit nature of Ms. Kunda's business enterprise.

60.     In March, 2007, Ms. Kunda threatened Mr. Willard with financially ruinous litigation were he to report her illicit activity to the authorities.

61.     On or about May 7, 2008, Defendant Cecil Bank informed Mr. Willard that interference with its contract with Ms. Kunda would not be tolerated.

62.     On or about August 1, 2008, Mr. and Mrs. Willard reported Ms. Kunda's business operations to the Internal Revenue Service and to the Comptroller for the State of Maryland. Upon information and belief, both investigative agencies have commenced investigations.

63.     On or about, August 15, 2008, Ms. Kunda, in the person of her attorney E. Ellis Rollins, Esq., wrote Mr. Willard a personal letter in which he threatened Mr. Willard with criminal prosecution and civil litigation if Mr. Willard persisted in reporting Ms. Kunda to the authorities.

64.     On or about September 30, 2008, Mr. and Mrs. Kunda, and Mr. and Mrs. Holmquist, by and through their attorney, Counsel Rollins, commenced the aforesaid civil litigation against Mr. Willard, a *lis pendens* action, in the Circuit Court for Cecil County, Maryland.  The *lis pendens* action had the effect of creating a cloud over title, so that Mr. Willard's ability to develop the property, final approval for which he had already received from the Cecil County Planning Commission (hereinafter, CCPC), on or about November 17, 2008, came to a standstill.  The purpose of bringing the action was specifically to create the cloud over

title, to stop sale of subdivision plots, approval for which Mr. Willard had received from CCPC, and drive him to financial ruin.

65.     On or about December 29, 2009, Defendant Cecil Bank notified the Plaintiff, Debra Willard, who is not a member of Whitetail Holdings, LLC, that it was commencing civil foreclosure proceedings against Mr. Willard, Whitetail, and Mr. Willard; that all monies payable under the loans made by Cecil Bank were being accelerated and were now due, including the funds due on the personal guaranty made on Ms. Kunda's business enterprise, Hack's Point General Store.

66.     Defendant, Cecil Bank, has not, however, instituted collection proceedings against Ms. Kunda, upon information and belief, for the same line of commercial credit on which Mr. Willard, a secondary guaranty, is currently under threat of foreclosure.

67.     Without the consent and approval of Defendants Hack's Point, Defendants Kunda, Defendants Holmquist and Defendants Cecil Bank, who have unlawfully conspired to procure his consent to the guaranty by misrepresentation and trick, or to stop sale of the subdivision by frivolous litigation, the Defendants would not be in such an advantageous position.

68.     Without the consent and approval of Defendants Hack's Point, Defendants Kunda, Defendants Holmquist and Cecil Bank, who have unlawfully conspired to procure his consent to the guaranty by misrepresentation and trick, the illicit nature of Defendants' Hack's Point, Kunda, Holmquist and Cecil Bank could not continue to operate and flourish.

69.     Without the consent and approval of Defendants Hack's Point, Defendants Kunda, Defendants Holmquist and Defendant Cecil Bank, Mr. Willard's interest in real property would not be threatened and the value of his property not damaged and diminished.

**WHEREFORE,** Plaintiffs, Douglas and Debra Willard, and Whitetail Holdings, LLC respectfully pray this Honorable Court for the following relief:

a)      An award of compensatory damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

b)      An award of reasonable attorney's fees, costs, and other expenses, including expert and other discovery-related fees and expenses;

c)      An award of punitive damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

d)      A preliminary injunction and command from this Honorable Court, that the Defendants Kunda, Hack's Point, Holmquist and Cecil Bank be enjoined to cease and desist their unlawful gambling foreclosure activities against the Plaintiffs and that illegal gambling activities and unlawful cash proceeds of the Hack's Point business enterprise be attached;

e)      A preliminary injunction and command from this Honorable Court that the Defendant, Cecil Bank, be enjoyed from commencing or sustaining foreclosure proceedings against the Plaintiff, Douglas E. Willard and Debra Willard during the pendency of this action, as Mr. and Mrs. Willard will suffer irreparable harm without the grant of such relief;

f)      Such other and further relief as their cause, this Honorable Court's discretion, and the interests of justice permit or require.

### **REQUEST FOR JURY TRIAL**

Plaintiffs respectfully request a trial of this action by jury.

Respectfully submitted,


_____ /s/ William F. Hickey III
William F. Hickey III,
Federal Bar ID # 27341
Law Office of William F. Hickey, LLC
139 West Main Street
Elkton, MD 21921
Telephone:    410.620.5077
Telefax:        410.620.5033
Email: wfhickey@hickey-law.net


## VERIFICATION

Plaintiffs, Douglas E. Willard and Debra Willard, having read the foregoing allegations of the instant Complaint,  and having personal knowledge of the facts alleged herein, do hereby certify under the criminal penalties of perjury that they are true and correct to the best of my knowledge, information and belief.


/s/  Douglas E. Willard_____          Dated:        February 12, 2010
Douglas E. Willard

/s/  Debra A. Willard_____          Dated:        February 12, 2010
Debra A. Willard

/s/  Douglas E. Willard_____          Dated:        February 12, 2010
Douglas E. Willard, Managing Member
Whitetail Holdings, LLC