**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DOUGLAS E. WILLARD** | : | |
| **DEBRA WILLARD** | : | |
| **5403 Doral Drive** | : | |
| **Wilmington, DE 19808** | : | |
| | : | |
| **WHITETAIL HOLDINGS, LLC** | : | |
| **108 Stoney Battery Road** | : | |
| **Earleville, MD 21919** | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KAREN KUNDA** | : | **Case Number: 10 cv 00326 JFM** |
| **148 Stoney Battery Road** | : | |
| **Earleville, MD 21919** | : | |
| | : | |
| **ADAM KUNDA** | : | |
| **148 Stoney Battery Road** | : | |
| **Earleville, MD 21919** | : | |
| | : | |
| **WAYNE HOLMQUIST** | : | |
| **THE VILLAGES** | : | |
| **1795 Banberry Run** | : | |
| **Lady Lake, FL 32162** | : | |
| | : | |
| **NANCY HOLMQUIST** | : | |
| **THE VILLAGES** | : | |
| **1795 Banberry Run** | : | |
| **Lady Lake, FL 32162** | : | |
| | : | |
| **HACK'S POINT GENERAL STORE, INC.** | | |
| **1444 Glebe Road** | : | |
| **Earleville, MD 21918** | : | |
| | : | |
| **CECIL BANCORP, INC.,** | : | |
| **CECIL BANK** | : | |
| **127 North Street** | : | |
| **Elkton, MD 21922** | : | |
| **Serve:      Mary Halsey** | : | |
| **            Resident Agent** | : | |
| | : | |
| | : | |

**CHARLES F. SPOSATO, Sr.**                      :
**Chairman of the Board**                        :
**Cecil Bank**                                   :
**127 North Street**                             :
**Elkton, MD 21922**                             :
                                                 :
**MARY B. HALSEY,**                              :
**Chief Executive Officer**                      :
**Cecil Bank**                                   :
**127 North Street**                             :
**Elkton, MD 21922**                             :
                                                 :
**SANDRA D. FELTMAN,**                           :
**Director of Lending,**                         :
**Cecil Bank**                                   :
**127 North Street**                             :
**Elkton, MD 21922**                             :
                                                 :
**ANTHONY M. MOSS,**                             :
**Vice President, Commercial Lending,**          :
**Cecil Bank**                                   :
**127 North Street**                             :
**Elkton, MD 21922**                             :
                                                 :
**BRIAN L. LOCKHART, President**                 :
**Board of County Commissioners**                :
**Cecil County**                                 :
**200 Chesapeake Boulevard**                     :
**Elkton, MD 21921**                             :
                                                 :
         _____*Defendants.*_____                 :

## SECOND AMENDED COMPLAINT FOR MONETARY RELIEF,  AND DEMAND FOR JURY TRIAL

Plaintiffs, Douglas Willard, Deborah Willard, by their attorneys William F. Hickey III,

the Law Office of William F. Hickey, and Philip J. Sweitzer, hereby file this Second Amended

Complaint pursuant to Fed. R. Civ. P. 15 and this Court's order of June 30, 2010, and sue Karen

Kunda, Adam Kunda (hereinafter, "Kunda"), Hack's Point General Store, Inc., Nancy and

Wayne Holmquist, Cecil Bancorp, Inc., and Cecil Bank, (also known as Cecil Federal Savings

Bank and "Cecil Federal/Colombia Bank" as well as Charles F. Sposato, Mary B. Halsey, Sandra D. Feltman, Anthony M. Moss and Brian L. Lockhart, President of the Board of County Commissioners and Director of Cecil Bank. Additional information has emerged since filing the First Amended Complaint and this Amendment, therefore, is also warranted under Fed. R. Civ. P. 15(b), to conform the pleadings to newly discovered evidence in the case.

## PRELIMINARY STATEMENT

1.        This is a civil RICO action, alleging a pattern of corrupt racketeering activity and the commission of at least two predicate acts that constitute violations of 18 U.S.C. § 1962 (2008).  The gravamen of the Complaint that follows is:

2.        Defendant Karen Kunda operates or operated a country store called Hack's Point General Store, in Earleville, MD organized and incorporated as Hack's Point General Store, Inc. To augment her business's cash position, Ms. Kunda and Hack's Point operated or operates several electronic poker and other gaming machines in the general store facility that generate(d) thousands of dollars of illegal cash revenue monthly.  Ms. Kunda, with whom Plaintiff, Mr. Willard was formerly involved romantically, assured Mr. Willard verbally on several occasions that these gaming operations were perfectly legal, conducted in accordance with the laws of the State of Maryland.  Mr. Willard, her romantic confidante at the time, believed Ms. Kunda's representations, which were – in fact – misrepresentations.

3.        While in relationship with Mr. Willard, commercial lines of credit Ms. Kunda had procured matured, becoming due and payable, such that Ms. Kunda and Hack's Point needed to refinance the said existing commercial debt obligations. To this end, Ms. Kunda persuaded Mr. Willard to act as a guarantor on a line of credit extended by Defendant Cecil Bank, putting both his personal credit and real estate assets at risk.  To procure the line of credit, Ms. Kunda

specifically deceived Mr. Willard and failed to disclose on the loan application, that much of the revenue the store generated every month was illegal.  After offering his personal guarantee, however, Mr. Willard subsequently learned of the enterprise's patent illegality, broke off his relationship with Ms. Kunda, and informed Cecil Bank personnel that it was effectively being used as a depository for illegal cash proceeds of the General Store's gambling operation.  In June 2007, Mr. Willard sought to be removed as a personal guarantor of the General Store's unlawful business activities.

4.      Defendant Cecil Bank either expressly or constructively knew of the character of Ms. Kunda's and Hack's Point's gambling operation: Ms. Chrissy Biggs's daughter, a minor child of sixteen years, was one of Ms. Kunda's and Hack's Point's employees, who actually made payouts from the said gambling operation.  Ms. Biggs, moreover, was an employee and managing agent of the Defendant, Cecil Bank, at its local Cecilton, MD, branch, who also had direct contact with the Hack's Point Store's cash-rich depository activity, effectively acting in the capacity of laundering the illegal proceeds of the gaming operation. Not only did the Defendants Kunda induce the transactions by fraud:  with its enormous financial clout, influence in the community and appetite for securing commercial loans through deeds of trust against real property, Cecil Bank sought to turn the fraud to its advantage, turning a blind eye to the illegality of the General Store's cash-rich operation, to procure a security interest in Mr. Willard's highly desirable tract of agricultural land, real property that Mr. Willard acquired to prepare for residential development.

5.      As the allegations that follow demonstrate, the Defendants engaged in a related pattern of activity within Cecil County, Maryland, that revolve around two overlapping and related fraudulent schemes:  a) first, they engaged in a commercial loan transaction that was

designed to suppress the illegal purpose of the financing transaction and procure by fraud Mr. Willard's participation in that scheme for the purpose of "trapping" him as a participant in the illegal gambling operation; b) second, the goal was specifically to ensure Mr. Willard incurred over half a million dollars in debt liability and – thus – to expose him to deepening insolvency in a "plan to fail" scheme, so the Cecil Bank Defendants could swoop in and take his real property asset on the cheap, after Mr. Willard had borne the cost, effort, and risk to develop a fifty-seven acre plot of agricultural real estate for residential development.  The Defendants directly profited knowing there was patent fraud in these transactions.

6.     The said Defendants exercised control over the transaction by virtue of their fiduciary relationship or special relationship of trust; alternatively, they facilitated the transaction;

7.     The Plaintiff justifiably relied upon the Defendants to his detriment, though reliance is not even a required element of a RICO claim;

8.     Finally, the Defendants' frauds constitute a "pattern" of activity, because of the relationship of one predicate act to the other.  Further, the acts alleged in the instant complaint utilize interstate commerce, the federal mails, and wire communications to facilitate the Defendants' unlawful profiteering, in clear violation of 18 U.S.C. § 1962, or are indictable offenses under the Illegal Gambling Business Act of 1970, codified as amended at 18 U.S.C. § 1955 (2010), other Maryland consumer protection statutes, and/or constitute the commission of common law torts.

## JURISDICTION AND VENUE

9.     Because the instant lawsuit raises questions arising under the laws of the United States, specifically under 18 U.S.C. § 1961 *et seq*., this Honorable Court has federal question

jurisdiction pursuant to 28 U.S.C. § 1331 (2008); this Court has supplemental or pendent jurisdiction over the related state law claims and should exercise such jurisdiction pursuant to 28 U.S.C. § 1367 (2008).  Inasmuch as all of the relevant events recounted in this Complaint and all of the defendant actors perform their functions within the geographical boundaries of the State of Maryland, venue in the United States District Court for the District of Maryland is proper. Further, because the real property at issue is located in this District and the events occurred in the District, venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 (b)(2) (2008).

## PARTIES

10.     The Plaintiff, Douglas E. Willard, is an adult individual and citizen of the State of Delaware, who currently resides at 5403 Doral Drive in Wilmington, DE 19808.  Mr. Willard currently owns a tract of agricultural land he has been attempting to prepare and market for residential development located in Cecil County, Maryland, which was the subject of a *lis pendens* action in the Circuit Court of Cecil County, captioned as *Karen Kunda et al., v. Douglas E. Willard*, No. 07-C-08-000283.  Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

11.     The Plaintiff, Debra Willard, is an adult individual and citizen of the State of Delaware, who currently resides at 5403 Doral Drive in Wilmington, DE 19808.  She  is  the spouse of the Plaintiff, Douglas Willard.  Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

12.     The Plaintiff, Whitetail Holdings, LLC (hereinafter, "Whitetail"), is a duly formed limited liability company in good standing, identified by the State of Maryland Department of Assessments and Taxation (hereinafter, "SDAT") registration ID number W10545663, with principal business address at 108 Stoney Battery Road in Earleville, MD 21919.  Whitetail is in

good standing with SDAT as of the date of filing the instant complaint.  Mr. Willard is the managing member of Whitetail, which is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

13.     The Defendant, Karen Kunda, is an adult individual and citizen of the State of Maryland, who resides at 148 Stoney Battery Road, Earleville, MD 21919.  Ms. Kunda was previously romantically tied to Plaintiff, Mr. Willard, and persuaded Mr. Willard – as set forth in greater detail, *infra* – to act as a guarantor on a commercial loan she procured from Defendant, Cecil Bank, by misrepresenting that she was operating gaming machines in accordance with the dictates of Maryland and federal law.  Defendant Ms. Kunda also directly oversaw the operations of the Hack's Point Store's unlawful gambling business. Defendant Kunda is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

14.     The Defendant, Adam Kunda, is an adult individual and citizen of the State of Maryland, who resides at 148 Stoney Battery Road, in Earleville, MD 21919.  Mr. Kunda is the spouse of Defendant, Karen Kunda, and is a "person," within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).   Defendant, Mr. Kunda, was part of the Hack's Point Store illegal gambling operation, where he, among other things, ran cash and other deposits to Defendant Cecil Bank for deposit and money laundering, etc.

15.     The Defendant, Wayne H. Holmquist, is an adult individual and citizen of the State of Florida, who resides at The Villages, 1795 Banberry Run, Lady Lake, FL 32162.  Mr. Holmquist is the step-father of Defendant Karen Kunda, and is a "person," within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).   Mr. Holmquist owns a tract of property adjoining Mr. Willard's property, and was a Plaintiff in the action stated above, captioned as *Karen Kunda et al., v. Douglas E. Willard*, No. 07-C-08-000283.  Mr. Holmquist was also aware of, and a

participant in, the Hacks Point Store's illegal gambling business, though his role in that enterprise seems indirect.

16.      The Defendant, Nancy A. Holmquist, is an adult individual and citizen of the State of Florida, who resides at The Villages, 1795 Banberry Run, Lady Lake, FL 32162.  Mrs. Holmquist is the adoptive Mother of the Defendant, Karen Kunda, and is a "person," within the meaning of 18 U.S.C. § 1961 *et seq*. (2008). Mrs. Holmquist owns a tract of property adjoining Mr. Willard's property, and was a Plaintiff in the action stated above, captioned as *Karen Kunda et al., v. Douglas E. Willard*, No. 07-C-08-000283. Mrs. Holmquist was also aware of, and a participant in, the Hacks Point Store's illegal gambling business, though his role in that enterprise seems indirect.

17.      The Defendant, Hack's Point General Store, Inc., (hereinafter, "Hack's Point,") is a corporation formed and organized under the laws of the State of Maryland, with principal business address at 1444 Glebe Road, in Earleville, MD 21918.   The Defendant, Karen Kunda, is presently shown as the principal owner/operator of Hack's Point, which is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).  Hack's Point General Store, Inc., was the venue and principal operator – along with Ms. Kunda – of an unlawful gambling business.

18.      The Defendants, Cecil Bancorp, Inc., and Cecil Bank, is a corporation formed and organized under the laws of the State of Maryland, with principal business address at 127 North Street, in Elkton, MD 21922. .  Defendant Cecil Bank is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).   Defendant Cecil Bank acted to launder unlawful gambling proceeds for Ms. Kunda, knowingly suppressed information of her activities to extend federally insured loan proceeds to her, and fraudulently procured a loan guaranty to finance her unlawful

enterprise of Mr. Willard, to expose his real property asset to excessive encumbrance and him to deepening insolvency after he had done all the work to develop the real property asset.

19.     The Defendant, Charles F. Sposato, Sr., is the Chief Executive Officer of Cecil Bank, with principal business address at 127 North Street, Elkton, MD 21922.  Mr. Sposato is named as the substitute trustee for the Defendant, Cecil Bank, in the foreclosure action the institution initiated against Mr. Willard on February 5, 2010 in the Circuit Court for Cecil County.  Vicarious liability for Mr. Sposato's tortious acts is imputed to his employer, Cecil Bank, under the theory of agency known as *respondeat superior*.  In this lawsuit, Mr. Sposato is sued in both his official and personal capacity, since the Plaintiff alleges his action in foreclosing against his property was motivated by personal animus, thus was intentionally tortious, malicious, retaliatory, and in violation of federal and state lending law.  Defendant Sposato is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).  Mr. Sposato, specifically, has made determinations to modify commercial loans for influential citizens within the Cecil County community that are highly favorable to these individuals, premised purely on personal bias.

20.     The Defendant, Mary B. Halsey, is the President of Cecil Bank, with principal business address at 127 North Street in Elkton, MD 21922.  Ms. Halsey is named as the substitute trustee for the Defendant, Cecil Bank, in the foreclosure action the institution initiated against Mr. Willard on February 5, 2010, in the Circuit Court for Cecil County.  Vicarious liability for Ms. Halsey's tortious acts is imputed to her employer, Cecil Bank, under the theory of agency known as *respondeat superior*.  In this lawsuit, Ms. Halsey is sued in both her official and personal capacity, since the Plaintiff alleges her action in foreclosing against his property was intentionally tortious, malicious, retaliatory, and in violation of federal and state lending law. Defendant Halsey is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008). Ms.

Halsey, specifically, has made determinations to modify commercial loans for influential citizens within the Cecil County community that are highly favorable to these individuals, premised purely on personal bias.

21. The Defendant, Sandra D. Feltman, is the Vice-President of Cecil Bank, with principal business address at 127 North Street in Elkton, MD 21922. Ms. Feltman is the Senior Vice President in charge of lending for the Defendant, Cecil Bank, Inc., and is named a substitute trustee and party to the Defendant Cecil Bank, Inc.'s foreclosure action institution initiated against Mr. Willard on February 5, 2010, in the Circuit Court for Cecil County. Vicarious liability for Ms. Feltman's tortious acts is imputed to her employer, Cecil Bank, under the theory of agency known as *respondeat superior*. In this lawsuit, Ms. Feltman is sued in both her official and personal capacity, since the Plaintiff alleges her action in foreclosing against his property was intentionally tortious, malicious, retaliatory, and in violation of federal and state lending law. Defendant Feltman is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008). Ms. Feltman specifically, has made determinations to modify commercial loans for influential citizens within the Cecil County community that are highly favorable to these individuals, premised purely on personal bias.

22. The Defendant, Anthony Moss, is the Vice-President of Defendant Cecil Bank. Inc., with principal business address at 127 North Street in Elkton, MD 21922. Mr. Moss is the Senior Vice President in charge of commercial lending for the Defendant, Cecil Bank, Inc. Vicarious liability for Ms. Moss's tortious acts is imputed to his employer, Cecil Bank, under the theory of agency known as *respondeat superior*. In this lawsuit, Mr. Moss is sued in both his official and personal capacity, since the Plaintiff alleges his action in refusing to disclose certain documents pertaining to the Defendant Kunda's commercial line of credit, the guaranty he

executed, and a threat to "call the loan" violated state and federal lending law as they were personally retaliatory acts having nothing to do with the lender's repayment interests.  Instead, these were intentional acts that were part of the financial institution's "plan to fail" fraudulent scheme. Defendant Moss is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008). Mr. Moss, specifically, has made determinations to modify commercial loans for influential citizens within the Cecil County community that are highly favorable to these individuals, premised purely on personal bias.

23.     The Defendant, Brian L. Lockhart, is an adult individual and the President of the Cecil County Board of County Commissioners, whose principal place of business is located at 200 Chesapeake Blvd., Elkton, MD 21921.  Mr. Lockhart is not only the President of the Cecil County Board of County Commissioners, but is also a Director of Defendant Cecil Bank, who presides in a directly conflicted position as the President of a body of Cecil County government. Effectively, Mr. Lockhart is the Bank's "point man" in local Cecil County politics and government, acting to ensure its interests receive special attention by the Board of County Commissioners.  In Mr. Willard's case, largely through Mr. Lockhart's instigation, the Board has sued Mr. Willard to procure an injunction against Mr. Willard for publicizing information about his tract of real estate being developed for residential resale. Defendant Lockhart is a "person" within the meaning of 18 U.S.C. § 1961 *et seq*. (2008).

## STATEMENT OF FACTS

24.     The allegations of ¶¶ 1-23 are incorporated by reference, as though set forth in full herein.  Plaintiff, Douglas E. Willard, was formerly in a romantic relationship with Defendant, Karen Kunda, who is and/or was the proprietor of Hack's Point General Store in October, 2006, at the time she was attempting to procure an operating line of credit for her

enterprise from Defendant, Cecil Bank.  At the time of making application for said line of credit, Ms. Kunda sought five hundred seventy thousand dollars ($570,000.00) in financing to refinance existing obligations that had matured and were due.  The financial institution, however, valued her enterprise at only four hundred seventy thousand ($470,000.00) dollars, requiring Ms. Kunda to procure an additional personal guarantee and collateral of a co-signatory on the note, to secure the additional one hundred thousand dollars ($100,000.00) in financing.

25.     At the time, Ms. Kunda was involved in a romantic relationship with Mr. Willard, who owned a sizeable tract of developable agricultural waterfront real property in Cecil County, located in Earleville, Maryland.  Cecil Bank officials were specifically aware of Ms. Kunda's relationship with Mr. Willard, because a year earlier, in March of 2005, Mr. Willard learned of the availability of a piece of residential real estate in Georgetown, MD that the owner, Thomas Vaughan, was attempting to sell.  Mr. Vaughan, a member of the Board of Directors of Cecil Bank, in direct contact with Mr. Willard, subsequently referred him to Cecil Bank in early 2005 to procure the mortgage purchase money.   Mr. Willard, therefore, was already an established customer of Cecil Bank in March, 2006, at the time Ms. Kunda was seeking to refinance her existing commercial obligation.

26.     Because of the relationship of trust Ms. Kunda enjoyed with Mr. Willard at the time, in October, 2006; because Mr. Willard was known to Cecil Bank officers as a highly valued customer; because Cecil Bank had direct knowledge that Mr. Willard had purchased a fifty-seven acre plot of prime Chesapeake farmland in calendar year 2000, the bank initially believed was not suitable for development; because the same Cecil Bank officers later learned that Mr. Willard had procured the necessary environmental and percolation studies to render the land suitable for residential development;  and because Cecil Bank also had direct knowledge of

the cash-rich nature of the General Store's operations by virtue of Ms. Kunda's personal friendship with Mr. Vaughn's daughter, the bank's commercial lending division approached Mr. Willard in early 2006, to enlist his aid in procuring Ms. Kunda's commercial credit transactions, in the person of Anthony M. Moss, Vice President of the Commercial Lending Division.

27.     Subsequently, Mr. Willard agreed to act as a co-signer on the commercial line of credit the Defendant, Cecil Bank, had extended to Ms. Kunda's business enterprise, Hack's Point General Store (hereinafter, "the Store.")  Mr. Willard executed the personal guaranty on the promissory note on or about May 22, 2006, based on Ms. Kunda's express and implied representations that the Store's operations were lawful.  At the time of signing the promissory note, Mr. Willard was also misled to believe by Cecil Bank personnel, that he was acting as a guarantor only for the additional $100,000.00 in financing deficiency Ms. Kunda could not secure with the value of the business enterprise. On the same date, however, May 22, 2006, Cecil Bank procured a deed of trust against Mr. Willard's tract of agricultural property located in Earleville, for the entire five hundred seventy thousand dollar ($570,000.00) face amount of the note.  This indemnity deed of trust is a forgery and a fraud – the separately "initialed" pages were never executed by Mr. Willard.  After learning this fact, Mr. Willard sought disclosure of the loan documents and any related financing statement, which documents the Defendant, Cecil Bank, has consistently refused to disclose under a "borrower privacy" theory.  Mr. Willard subsequently procured a copy of the deed of trust, a true and correct copy of which is attached to the original Complaint.  As indicated, the "initials" throughout the document are not in his hand, and the document is largely a forgery.

28.     On or about April 25, 2007, Mr, Willard confronted Ms. Kunda about the illegality of the gambling enterprise she was carrying on with electronic gaming machines in the

back room of the Store. The Store supplied the venue and store front for these illegal gaming operations.  In spite of the fact that Mr. Willard has since procured specific evidence of gaming payouts from her store, Ms. Kunda, both verbally and in writing (in electronic mail messages) continued to persist in her representation that operation of the gambling machines was within the parameters of the law.  Copies of the said electronic mail messages have already been introduced as Exhibits with previous versions of this Complaint.

29.    Mr. Willard broke off relations with Ms. Kunda on or about December 5, 2006, and contacted the appropriate regulatory authorities in mid-2007, including the Comptroller of Maryland, who instituted an investigation of Ms. Kunda's enterprise's illegal gambling operation.  Mr. Willard was subsequently contacted by Counsel for Ms. Kunda, Ellis Rollins, Esq., on or about August 15, 2008, who demanded that Mr. Willard cease and desist contact with the appropriate enforcement authorities.

30.    In February, 2008, Mr. and Mrs. Willard approached several lenders, including Farm Credit and other institutions, to arrange for refinancing and payment of the obligation to Cecil Bank because they no longer wished to be Cecil Bank's customer.  They procured preliminary approval for refinancing of their entire obligation to Cecil Bank, with the exception of the $570,000.00 Kunda guaranty obligation.

31.    In May, 2008, Mr. Willard contacted Cecil Bank Officer Anthony Moss, to specifically inform the bank that it was receiving cash deposits from an illegal gaming operation which were the product of Ms. Kunda's general store enterprise.  Mr. Moss sought to downplay the credibility of Mr. Willard's information, explaining to Mr. Willard that dissemination of information about Ms. Kunda's illegal gaming enterprise might constitute "interference" with the Bank's contractual relations; and, that because of the high revenue stream and regularity of cash

deposits from the Hack's Point enterprise, Cecil Bank considered Ms. Kunda's enterprise a highly valued customer.

32.     Summarily, Ms. Kunda, through her attorney Ellis Rollins, Esq., instituted a *lis pendens* action against Mr. Willard identified in ¶ 7, *supra*, the ostensible purpose of which was to coerce Mr. Willard into silence about the inherent illegality of her activity and his execution of the promissory contract into which he had been induced by her misrepresentation. The *lis pendens* action had such a coercive effect, by creating a cloud over title to Mr. Willard's real property, making sale of sub-divisible lots in the plat either impracticable.  As a result of the overencumbrance of his real property asset, Mr. Willard could not procure refinancing of his existing obligation.  As a result of the lis pendens action and the cloud it created over title, Mr. Willard could not complete development of the plat to make the subdivided lots saleable. Premised on the Defendants' concerted efforts, Mr. Willard began to experience a period of deepening insolvency in late 2008, which grew more severe through 2009 into 2010.

33.     Defendant Cecil Bank instituted foreclosure proceedings against Mr. Willard on or about February 5, 2010, as the holder of a deed of trust on Mr. Willard's property, for a debt Mr. Willard allegedly owes Cecil Bank – at least, in part - on a note the Bank has refused to provide him a copy, for a guaranty procured both by misrepresenting the legality of Hack's Point business operations and the extent of Mr. Willard's liability.

## SUBSTANTIVE ALLEGATIONS AND CLAIMS FOR RELIEF

### First Predicate Act:

34.     The allegations of ¶¶ 1-33 are incorporated by reference herein, as though stated and set forth in full.  As early as March, 2006, and possibly earlier, the Defendant Karen Kunda, attempting to procure commercial financing from the Defendant, Cecil Bank, committed fraud

by misrepresenting to the Plaintiff, Douglas E. Willard, that the business operations of Defendant Hack's Point General Store, Inc. were legal. She failed to disclose that a significant portion of the proceeds of her business – reported to be in the thousands of dollars each month – were generated by illegal electronic gaming activities, and thereby fraudulently induced the Plaintiff, Douglas E. Willard, to enter into a contract as a co-signatory to guarantee her line of credit.

35.     As a result of her fraudulent inducement, Plaintiff Willard actually executed the promissory contract, incurring secondary liability on the note, pledging his personal credit and real property assets as security for the note.  As a result of pledging his personal credit and real property asset for Ms. Kunda's business enterprise, Mr. and Mrs. Willard's personal credit was impaired, he sustained a deepening period of insolvency beginning in late 2008, a preliminary approval of refinancing they had procured from another financial institution to pay off the promissory notes held by Defendant Cecil Bank was rescinded.  Subsequently, the Defendant Cecil Bank, foreclosed on the property on or about February 5, 2010.  To stave off judicial sale of his property on April 27, 2010, Mr. Willard filed for protection under Chapter 13 of the United States Bankruptcy Code on April 26, 2010.

36.     The purpose of ensnaring Mr. Willard as a guarantor on the Store's obligation was not only to ensure he incurred the secondary liability, but also to ensure he was involved in financing what was a patently criminal enterprise, to ensure he was part of the criminal enterprise to coerce his continued participation and constrain any ability to extricate himself from the enterprise, for fear of criminal prosecution.

37.     But for the incursion of the $570,000.00 fraudulent guaranty obligation, Mr. and Mrs. Willard would have qualified for alternate financing on the property, would have remained

solvent and could have simply paid off their Cecil Bank promissory note or notes to continue with development of the agricultural plat for development and resale.

38.     Mr. and Mrs. Willard lost approximately $1.2 million dollars in prospective sales of subdivided lots based on letters of intent by interested parties who approached him, following final approval of the subdivision plan by the Cecil County Planning Commission in August, 2008.

**Second Predicate Act:**

39.     The allegations of ¶¶ 1-38 are incorporated by reference herein, as though stated and set forth in full.

40.     Defendant Cecil Bank, with the intent to defraud Plaintiff Willard and to procure his real property by such fraud, deceptively understated the extent of Mr. Willard's financial obligation to the institution, representing that he was obligated to the bank for only one hundred thousand dollars ($100,000.00), representing the difference between the line of credit Ms. Kunda had applied for, that amount being five hundred seventy thousand dollars ($570,000.00), and the amount for which she could independently qualify with the value of her business enterprise securing the note, which amount was four hundred seventy thousand dollars ($470,000.00).   The Defendants also violated 18 U.S.C. § 1014 in so understating the value of Ms. Kunda's business enterprise, and are known to use local appraisers who manipulate the appraised values of business interests and real property to meet their needs.   In particular, Defendant Halsey is openly known to members of her own staff and the real estate professionals in the Cecil County/Elkton community to use certain appraisers based upon their willingness to manipulate and thereby "fix" appraised real estate and business values.

41.    When the Plaintiff requested disclosure of the commercial note loan documents in May, 2007, the Defendant, Cecil Bank, in the person of Vice-President Anthony Moss, refused to comply with his request.

42.    Because the initials on the indemnity deed of trust are not in the Plaintiff's hand, he reasonably believes that the transaction was fraudulent and that Defendants Cecil Bank, Sposato, Halsey, Feltman and Moss altered the loan documents to fraudulently reflect his obligation on the note at $570,000.00, rather than the credit "gap" of $100,000.00, to procure a deed of trust against his real property for the far higher amount.

**Third Predicate Act:**

43.    The allegations of ¶¶ 1-42 are incorporated by reference herein, as though stated and set forth in full.

44.    Chris Biggs, Cecil Bank had specific knowledge of the illegality of the Store's gambling business.

45.    Cecil Bank, nevertheless, directly solicited Mr. Willard to procure Ms. Kunda's and the Store's commercial financing business, for the express or implied purpose of faqilitating its cash-rich operations, and to assist her in illegally laundering its cash-rich proceeds. [1]

46.    The Cecil Bank Defendants, and in particular, Defendant Moss, knowingly approved and accepted the deposit of funds acquired through Defendants Kunda illegal gambling activity, and – as such – became a vehicle for laundering such illegal cash proceeds, which

---

[1]    See, Federal Reserve Enforcement Actions, in particular an agreement between Cecil Bank and the Federal Reserve date July 2, 2010, in which Cecil Bank officials agree to stringent money laundering compliance measures, available at: http://www.federalreserve.gov/newsevents/press/enforcement/20100702a.htm (last visited July 10, 2010).

activity continues to the date of filing the instant Complaint, upon information and belief.  The Cecil Bank Defendants concealed the illegal source of Ms. Kunda's gambling proceeds.

47.   The Cecil Bank Defendants embroiled Mr. Willard in Ms. Kunda's illegal enterprise specifically to ensnare him with its participation in the money-laundering scheme, to ensure his complicity and acquiescence.

**Fourth Predicate Act:**

48.   The allegations of ¶¶ 1-47 are incorporated by reference herein, as though stated and set forth in full.

49.   The Defendant, Cecil Bank, aware that Mr. Willard possessed highly desirable developable land, and aware that Mr. Willard was romantically tied to Ms. Kunda, conspired to interfere with Mr. Willard's development and sale of the real property asset, by procuring Ms. Kunda's commercial loan business, and thereby, created a plan for Mr. Willard to fail.

50.   Key to this "plan to fail" was to ensure the encumbrance of Mr. Willard's real property asset with Ms. Kunda's $570,000.00 commercial loan guaranty, to create a level of indebtedness beyond Mr. Willard's capacity to refinance:   to ensure the $570,000.00 encumbrance was tenable, Cecil Bank officials Moss, Feltman, Sposato and Halsey concealed the inherent illegality of Ms. Kunda's enterprise, so its commercial loan contract and guaranty would not be associated with an illegal gambling enterprise.

51.   The other key to this "plan to fail" scheme was to ensure Mr. Willard was "trapped," and had no alternative financing way out of the deal.  Part and parcel of that "entrapment" scheme was to ensure he was duped into participating in what was a criminal enterprise; the other part was to ensure he was over-financed, and that the real property asset was encumbered beyond its value.

**Other factual allegations**

52.    The allegations of ¶¶ 1-51 are incorporated by reference herein, as though stated and set forth in full.

53.    To summarize, the Defendant, Cecil Bank, understated the value of Ms. Kunda's enterprise, knowing that she enjoyed a confidential relationship of trust with Mr. Willard, and would require a co-signer on a half-million dollar line of credit for her commercial enterprise, "Hack's Point."  Defendant Cecil Bank's role in the transaction was to understate the value of the enterprise, to create the artificial need to secure the line of credit with Mr. Willard's real property assets, and to therefore encumber him with debt beyond his means to refinance, and to ensure his acquiescence by entrapping him in a financing transaction whose entire basis was to fund a criminal enterprise, such that he would be inextricably tied to the institution for all future financing, including financing that it used to service the mortgage on its own purchase money loan, to be the finance engine of all future development.  By guaranteeing his failure to complete the development of the unimproved plat for residential development, it could swoop in predatorily at the end of the development process, saddle Mr. Willard with the entire cost of the project, and take the project for facile resale at auction.

54.    Cecil Bank officials were also aware that Mr. and Mrs. Holmquist were in the business of real estate investment, were "deep pockets," and were interested in acquisition of the land.

55.    The Bank, and its officers, Sposato, Halsey, Feltman and Moss, also controlled the allocation of line of credit assets, which were being disbursed to pay loan payments on the mortgage purchase money loan.  The Bank, thus, had the power to artificially create "default" situations that did not actually exist at the time, or existed only because the Defendants Cecil

Bank, Inc, and its officers Sposato, Halsey, Feltman, and Moss intentionally withheld disbursement of the said proceeds to artificially create the default condition.

**Relationship of the First, Second, Third and Fourth Predicate Acts to One Another**

56.    The allegations of ¶¶ 1-55 are incorporated by reference herein, as though stated and set forth in full.

57.    The first, second third and fourth predicate acts bear a demonstrated relationship to one another, inasmuch as the procurement of financing with the Defendant financial institution, Cecil Bank, was the initial goal of the Defendant, Ms. Kunda; misrepresentation of the source of her business proceeds was a means of inducing the Plaintiff, Mr. Willard to act as guarantor for her business loan; the second and third acts ensured that Mr. Willard was ensnared in the transaction, with no real route of escape.  By committing to a financing transaction that a) over-encumbered his real property asset beyond its value, and b) embroiled him in what was patently a criminal enterprise, the Defendants conspired to back Mr. Willard into a financial corner from which he could not escape, the inevitable consequence of which was to injure him in his property by the incursion of ever deepening indebtedness and insolvency.

58.    The ongoing nature of the illicit nature of the gambling activity, continuity in the generation and laudering of unlawful proceeds over a period of years, concealment of the illicit nature of the proceeds; misrepresentation over the duration of the parties' relations; and the coercive nature of the personal relationship with Ms. Kunda and the contractual relationship with the Bank, demonstrate relatedness between first and second predicate acts:  to get, and keep, Mr. Willard in a compromised, over-indebted circumstance.

59.    Ultimately, the Cecil Bank Defendants devised a plan for Mr. Willard to fail, to exploit his indebtedness and hard work, for the purpose of predatorily swooping in at the last

minute, to force his real property asset from his hand by foreclosure.  That plan began by a fraud to understate the value of Ms. Kunda's business enterprise, to artificially create the need for the guaranty.  The "plan to fail" proceeded to induce Mr. Willard to act as a communication conduit, and procure his signature on the guaranty, by misrepresenting the true extent of the encumbrance.  After procuring the guaranty, the Cecil Bank Defendants, to maintain the legality of the commercial note guaranty instrument Mr. Willard had executed for Ms. Kunda, suppressed and concealed information it  knew or constructively knew from the inception of the transaction about the illegal nature of the proceeds.   Finally, the Cecil Bank Defendants artificially created a default condition by withholding disbursements and intentionally misdirecting fund allocations from Mr. Willard's money market account, to then precipitate a foreclosure, to force the real property asset to an auction sale.

## COUNT I – RICO CLAIM UNDER 18 U.S.C. § 1962(d)

60.     The allegations of ¶¶ 1-59 are incorporated by reference herein, as though stated and set forth in full.

61.     Defendant Karen Kunda's role in the conspiracy was to procure, through her romantic involvement with Willard, his agreement to act as a guarantor for her commercial loan, and to create a securitized obligation against which the Defendant, Cecil Bank, could leverage the Plaintiff's interest in the real property in Earleville, MD.  Her role was also to embroil Mr. Willard unwittingly in an ongoing criminal enterprise, to create a coercive snare.

62.     The Defendant, Hack's Point General Store's role in the conspiracy was to supply the venue and "legitimate" store front out of which to operate the business.

63.     The Defendant Adam Kunda's role in the conspiracy was, as a retired Maryland State Trooper, to lend the credibility of law enforcement to the illegal gambling operation and to

ensure the security and "secrecy" of the operation.  Kunda's role in the conspiracy was also to ensure that criminal associates were paid and cash proceeds accounted for and distributed with no detection by law enforcement.  Finally, Kunda's role in the conspiracy was to be the communication conduit between Ms. Kunda and Cecil Bank, to facilitate the transfer of the illegal cash and act to promote Cecil's interest in procuring Mr. Willard's interest in the unimproved agricultural land at issue.

64.    The Defendants' Holmquist role in the conspiracy was to assist Ms. Kunda in procuring a second construction loan in the amount of $225,000.00 with Defendant Cecil Bank, on or about March 23, 2007, *before the property transfer actually occurred*, so she could dedicate those proceeds to improving the existing barn structure on the property for residential use.  By dedicating construction funds to improving the existing barn, rather than for construction of a free standing, single-family home, the Kunda, Holmquist and Cecil Bank Defendants ensured that appraisal value on the property could continue to be manipulated by, Cecil Bank, Sposato, Halsey, Feltman and Moss, to perpetuate continued encumbrance of Mr. Willard's real property asset.  Had the funds instead been dedicated to the construction of a free standing, single-family home, continued need for encumbering Mr. Willard's asset would have been obviated by the appreciation in value of Ms. Kunda's own real property asset. [2]

---

[2]    Moreover, the indemnity deed of trust procured by the Cecil Bank Defendants was also fraudulent:  it preceded Ms. Kunda's actual ownership interest in the property by a week, and the witnessing of signatures is fraudulent:  the date on the notarial seal predates the transaction by nearly a year, which page is clearly an "insert" copy of the notarial page from the $570,000.00 IDoT the Cecil Bank Defendants (Cecil Bank, Sposato, Halsey, Feltman and Moss) duplicated from Mr. Willard's IDoT, dated *June 30, 2006*.  A true and correct copy of the Kunda/Holmquist IDoT is attached to this Second Amended Complaint.  One is inclined to wonder how a transaction that occurred on March 23, 2007, to secure a conveyance a week later, could be witnessed nearly a year before the fact on June 30, 2006.  As has been shown, the indemnity deeds of trust with these various transactions are riddled with fraud and deception.

65.     The Defendant Cecil Bank's role in the conspiracy was to artificially create the need for the loan guaranty; to procure the guaranty by understating its true value and extent; to conceal the nature of the General Store's business enterprise and suppress information about the illegal operations it was funding with its commercial loan; and to allocate Mr. Willard's proceeds so they would be exhausted prior to the completion of the site plan, to create an artificial default condition and precipitate a foreclosure.   The Defendants Sposato's, Halsey's, Feltman's and Moss's role in the transaction was to ensure the plan to fail was executed.   Halsey procured the depressed valuation on the General Store; Moss procured the Plaintiff's signature as guarantor; Feltman procured the indemnity deed of trust and sequestered commercial loan documents from Mr. Willard; Sposato oversaw the foreclosure and listing of the property for judicial sale in April, 2010.   Defendant Lockhart's role in the conspiracy was to use the machinery of government to procure the Plaintiff's silence.   In June, 2010, the Cecil County Board of County Commissioner's sued Mr. Willard to procure an injunction for his silence, to stop him from publicizing the development and approval of his residential lots.

66.     Use of the United States mails or wire services to process loan applications, facilitate loans, and the use of interstate federal banking system to launder illegal gambling proceeds constitute violations of 18 U.S.C. §§ 1341 and 1343, in that, both separately and in the aggregate, constitute a scheme to defraud.   In the process of committing these acts, the Defendants committed more than two, substantive predicate acts, related to one another, and committed within the past ten (10) years, as defined by 18 U.S.C. § 1961(1), thereby constituting a pattern of activity under 18 U.S.C. § 1961(1).

67.     The enterprise in which the Defendants are engaged either occurs in, or affects, interstate commerce, which utilize the instrumentalities of the federal mails and wire services of some sort to approve and initiate the mortgage loans at issue.

68.     The Plaintiffs were injured in their property by the Defendants' actions committed in furtherance of their conspiracy, as specified in ¶¶ 1-65   to deprive them of their share of the true value of their real property.  Specifically, the Plaintiffs incurred secondary, guaranty liability on a $570,000.00 commercial obligation which the financial institution should never have approved; they were injured in their respective credit histories; as a result they were denied extension of credit for the total amount of indebtedness secured by their real property; they were denied access to the allocation of their own funds; and, ultimately, they were forced into foreclosure and a Chapter 13 bankruptcy filing.

69.     Thus, the Defendants, therefore, are jointly and severally liable for the commission of the said acts, in furtherance of their conspiracy.

**WHEREFORE,** Plaintiffs, Douglas and Debra Willard, respectfully pray this Honorable Court for the following relief:

a)     An award of compensatory damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

b)     An award of reasonable attorney's fees, costs, and other expenses, including expert and other discovery-related fees and expenses;

c)     An award of treble damages in the amount of three million dollars ($3,000,000.00) where authorized by statute;

d)     An award of punitive damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

e)      A preliminary injunction and command from this Honorable Court, that the Defendants Kunda, Hack's Point, Cecil Bank and Sposato, Halsey, Feltman and Moss be enjoined to cease and desist their unlawful gambling and foreclosure activities against the Plaintiffs and that illegal gambling activities and unlawful cash proceeds of the Hack's Point business enterprise be attached or seized;

f)      A preliminary injunction and command from this Honorable Court that the Defendant, Cecil Bank, be enjoined from sustaining foreclosure proceedings against the Plaintiff, Douglas E. Willard and Debra Willard; and, for

g)      Such other and further relief as their cause, this Honorable Court's discretion, and the interests of justice permit or require.

## COUNT II – CIVIL CONSPIRACY

70.     The allegations of ¶¶ 1-69 are incorporated by reference herein, as though stated and set forth in full.

71.     Sometime in May, 2006, the Defendants Hack's Point, Kunda and the Defendant Cecil Bank entered into an agreement, or at least an understanding, the actual purpose of which was to deprive Mr. Willard of his interest in land, by securing his personal guaranty on a line of credit extended by Defendant Cecil Bank to Ms. Kunda.    Ms. Kunda's eventual goal was to procure all Mr. Willard's property, through her parents, which aspiration she stated to several third parties.   Cecil Bank's eventual goal was to acquire, through the forcible mechanism of foreclosure, a completely prepared residential subdivision, for resale as a bank property, with Mr. Willard shouldering the expense and hard work for preparing the site.

72.     Thomas Vaughan is a member of the Board of Directors of Cecil Bank, who initially referred Mr. Willard to Cecil Bank to procure mortgage purchase money financing in

April, 2005, to finance Mr. Willard's purchase of Mr. Vaughan's home, which was then on the market.  Mr. Vaughan's daughter, Lisa, and Ms. Kunda, are close friends and confederates.  As a result of their friendship and Mr. Willard's election to purchase Mr. Vaughan's residential property through purchase money mortgage financing with Defendant, Cecil Bank, Defendant Cecil Bank learned of Mr. Willard's eventual purchase of the undeveloped tract of agricultural land in question, and devised a plan to acquire it, by – in part – encumbering it with Ms. Kunda's commercial loan guaranty.

73.     Mr. Anthony Moss solicited Mr. Willard to procure Ms. Kunda's commercial loan business, understanding they were romantically linked.

74.     Defendant Cecil Bank intentionally and fraudulently understated the value of Ms. Kunda's business enterprise, specifically to require a secondary guaranty on the note, particularly aware that Mr. Willard and Ms. Kunda were involved romantically.

75.     Throughout the course of their relationship, but specifically from December, 2002, through December, 2006, Ms. Kunda misrepresented to Mr. Willard the illicit nature of her business enterprise, which was continuous, and which illicit proceeds were used to pay both her personal and business expenses.

76.     In May, 2008, having learned of the illicit nature of the operation, Defendant Cecil Bank subsequently misrepresented the illicit nature of Ms. Kunda's business enterprise, to suppress information about its illegality, and thus maintain the appearance of legitimacy for the Kunda commercial loan guaranty Mr. Willard had executed.

77.     In March, 2007, Ms. Kunda threatened Mr. Willard with financially ruinous litigation were he to report her illicit activity to civil authorities.

78.     On or about May 7, 2008, Defendant Cecil Bank informed Mr. Willard that interference with its contract with Ms. Kunda would not be tolerated.

79.     On or about, August 15, 2008, Ms. Kunda, in the person of her attorney E. Ellis Rollins, Esq., wrote Mr. Willard a personal letter in which he threatened Mr. Willard with criminal prosecution and civil litigation if Mr. Willard persisted in reporting Ms. Kunda to the authorities.

80.     On or about September 30, 2008, Ms. Kunda, by and through her attorney, Counsel Rollins, commenced the aforesaid civil litigation noted in ¶ 11, *supra*, against Mr. Willard, a *lis pendens* action, in the Circuit Court for Cecil County, Maryland.  The *lis pendens* action had the effect of creating a cloud over title, so that Mr. Willard's ability to develop the property, final approval for which he had actually received from the Cecil County Planning Commission (hereinafter, CCPC) shortly after being served with the lawsuit, on or about November 17, 2008, came to a standstill.  The purpose of bringing the action was specifically to create the cloud over title, to stop sale of subdivision plots, approval for which Mr. Willard had received from CCPC, and drive him to financial ruin.

81.     On or about December 29, 2009, Defendant Cecil Bank notified the Defendant, Debra Willard, that it was commencing civil foreclosure proceedings against Mr. Willard, Whitetail Holdings, LLC, and Mr. Willard; that all monies payable under the loans made by Cecil Bank were being accelerated and were now due, including the funds due on the personal guaranty made on Ms. Kunda's business enterprise, Hack's Point General Store.

82.     Mr. and Mrs. Willard, therefore, suffered actual legal harm as the result of the Defendants' civil conspiracy.

WHEREFORE, Plaintiffs, Douglas and Debra Willard, respectfully pray this Honorable Court for the following relief:

a)      An award of compensatory damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

b)      An award of reasonable attorney's fees, costs, and other expenses, including expert and other discovery-related fees and expenses;

c)      An award of punitive damages in the amount of one million dollars ($1,000,000.00) against each Defendant, jointly and severally;

d)      A preliminary injunction and command from this Honorable Court, that the Defendants Kunda, Hack's Point and Cecil Bank be enjoined to cease and desist their unlawful gambling and foreclosure activities against the Plaintiffs and that illegal gambling activities and unlawful cash proceeds of the Hack's Point business enterprise be attached or seized;

e)      A preliminary injunction and command from this Honorable Court that the Defendant, Cecil Bank, be enjoined from sustaining foreclosure proceedings against the Plaintiff, Douglas E. Willard and Debra Willard; and, for

f)      Such other and further relief as their cause, this Honorable Court's discretion, and the interests of justice permit or require.

COUNTS VI-IX – VIOLATIONS OF 15 U.S.C. § 1681 – FAIR CREDIT REPORTING ACT

83.    The allegations of ¶¶ 1-82 are incorporated by reference herein, as though stated and set forth in full.

83.    The Defendant, Cecil Bank, erroneously and with malice reported the Plaintiffs in default on their mortgage commencing in July, 2009 and continuing on October, 2009 to the

major three credit reporting agencies, Equifax, Trans Union and Experian, when – in fact – the Defendant Cecil Bank, , artificially and with malice created the "default" condition to suit its own purposes in precipitating and instituting an unlawful foreclosure action.  Defendant Cecil Bank,  intentionally misappropriated Plaintiffs' money market account proceeds, specifically to create a false "delinquency" and opportunity to seize the Plaintiffs' real property asset.

84.   As a result of Defendants' said erroneous, intentional, defamatory and malicious report, Plaintiffs were damaged in their respective credit histories and reputations, thereby disqualifying them from refinancing their existing debt obligation.

WHEREFORE, Plaintiffs, Douglas E. and Debra Willard demand the payment of damages as follows:

a)   An award of actual damages in the amount of one thousand ($1,000.00) dollars per count of the Defendant, Cecil Bank,  as to each erroneous report;

b)   An award of punitive damages in the amount of one hundred thousand ($100,000.00) dollars;

c)   An award of reasonable attorney's fees in prosecuting this action; and

d)   For such other and further relief as their cause, the interests of justice, and the scope of this Honorable Court's discretion may permit or require.

COUNT X – BREACH OF FIDUCIARY DUTY

85.   The allegations of ¶¶ 1-84 are incorporated by reference herein, as though stated and set forth in full.

86.   Plaintiffs maintained a separate numbered account with the Defendant Cecil Bank, in the original amount of approximately one hundred thousand dollars ($100,000.00), access to which the Defendant, Cecil Bank, Inc., had restricted access, holding the funds as "collateral" to

secure the Plaintiffs' various mortgage accounts.

87.    The Defendants, Cecil Bank.  Sposato, Halsey, Feltman, and Moss were under a fiduciary duty to hold and allocate the funds in Plaintiffs' money market account, use of which it had restricted by Plaintiffs, and to apply them to his various mortgage account balances and other expenditures in a way that was as conservative and prudent as possible, to maintain his various accounts and so not to frivolously dissipate the said asset.

88.    The said Defendants, Cecil Bank,  Sposato, Halsey, Feltman, and Moss breached this duty by dissipating and allocating the assets in the said account to its own benefit rather than to the benefit of the Plaintiff, such that, at the close of calendar year 2009, the balance on this account was entirely depleted.

89.    The Defendants then purposefully delayed allocation and application of funds to the Plaintiffs' mortgage accounts, to purposefully precipitate a default condition in the said mortgage accounts, which ought not have existed had the funds been properly managed and applied.

90.    The Defendants' bad motive or intent in this action were to prematurely deplete the account, and force Mr. and Mrs. Willard into foreclosure, bankruptcy, and financial ruin.

91.    As a result of Defendants bad motive and action, Plaintiff was – in fact – eventually forced into foreclosure, bankruptcy and financial ruin.

WHEREFORE, Plaintiffs Douglas E. and Debra Willard pray this Honorable Court for the following relief:

a) an award of compensatory damages in the amount of $1,000,000.00 against all the aforesaid Defendants, Cecil Bank,  Sposato, Halsey, Feltman, and Moss, jointly and severally;

b) an award of punitive damages in the amount of $1,000,000.00 against all the

aforesaid Defendants, Cecil Bank,  Sposato, Halsey, Feltman, and Moss, jointly and severally; and,

c)   for such other and further relief as their cause, the interests of justice and the scope of this Honorable Court's discretion may permit or require.

COUNTS XI – XII – FRAUD IN THE INDUCEMENT

92.   The allegations of ¶¶ 1-91are incorporated by reference herein, as though stated and set forth in full.

93.   The Defendants Kunda, Holmquist, Hack's Point, Cecil Bank,  Sposato, Halsey, Feltman and Moss induced the Plaintiff, Mr. Douglas Willard, to execute the personal guaranty on Ms. Kunda's commercial line of credit in the amount of $570,000.00 by fraud, in at least two separate acts.

92.   The Defendant Karen Kunda specifically misrepresented a material fact, which was reasonably calculated to deceive, that is, the illegal nature of the business operation, and that the loan transaction would be used to fund her unlawful gambling activities.

94.   The Defendants, Cecil Bank,  Sposato, Halsey, Feltman and Moss  specifically misrepresented a material fact, reasonably calculated to deceive by purposefully understating that the value of the personal guaranty was only for one hundred thousand dollars ($100,000.00) or the "collateral gap" in the institution's valuation of Ms. Kunda's enterprise Hack's Point, rather than over a half million ($500,000.00) dollars.

95.   As a result of the Defendants' misrepresentations of material facts, the Plaintiff was deceived.

96.   As a result of the Defendants' Kunda, Cecil Bank, Inc.'s, Sposato's, Halsey's, Feltman's and Moss's inducement by fraud and successful deception, the Plaintiff was deceived

and suffered damage.  He incurred secondary liability on a half million dollar note, his credit and financial standing were impaired, all to underwrite and fund the Defendant Kunda's unlawful business enterprise.

WHEREFORE, Plaintiffs Douglas E. and Debra Willard pray this Honorable Court for the following relief:

a) an award of compensatory damages in the amount of $1,000,000.00 against all the aforesaid Defendants, Karen and Adam Kunda, Cecil Bank,  Sposato, Halsey, Feltman, and Moss, jointly and severally;

b) an award of punitive damages in the amount of $1,000,000.00 against all the aforesaid Defendants, Karen and Adam Kunda, Cecil Bank,  Sposato, Halsey, Feltman, and Moss, jointly and severally; and,

c) for such other and further relief as their cause, the interests of justice and the scope of this Honorable Court's discretion may permit or require.

COUNT XIII & XIV – TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE

97.    The allegations of ¶¶ 1-96 are incorporated by reference herein, as though stated and set forth in full.

98.    The Defendants Kunda, Holmquist, Cecil Bank,  Sposato, Halsey, Feltman and Moss's actions were intentional in fraudulently inducing Mr. Willard to execute the Kunda loan guaranty, in at least two separate acts.

99.    The procurement of Mr. Willard's personal guaranty was calculated to cause damage to Mr. Willard in the lawful conduct of his lawful business of developing his tract of undeveloped land, by encumbering the asset and impairing his future access to credit;

100.  The procurement of Mr. Willard's personal guaranty was done with the unlawful

purpose of creating such damage and loss, and – ultimately – done to deprive him of his entire interest in his property, without legal right or justifiable cause.

101.  As a consequence of the Defendants' actions, both jointly and severally, the Plaintiffs suffered extreme loss and hardship, and the prospective advantage of developing and vending his real property for sale.

WHEREFORE, Plaintiffs respectfully pray this Court for the following relief:

a) an award of compensatory damages in the amount of $1,000,000.00 against all the aforesaid Defendants, Karen and Adam Kunda, Nancy and Wayne Holmquist, Cecil Bank,  Sposato, Halsey, Feltman, and Moss, jointly and severally;

b) an award of punitive damages in the amount of $1,000,000.00 against all the aforesaid Defendants, Karen and Adam Kunda, Nancy and Wayne Holmquist, Cecil Bank,  Sposato, Halsey, Feltman, and Moss, jointly and severally; and,

c) for such other and further relief as their cause, the interests of justice and the scope of this Honorable Court's discretion may permit or require.

COUNT XV – BREACH OF CONTRACT – RESCISSION

102.      The allegations of ¶¶ 1-101 are incorporated by reference herein, as though stated and set forth in full.

103.      The contract for the sale of the ten acre tract of land purchased by Ms. Kunda, and executed by the parties on or about February 15, 2007, required her to procure financing to purchase the land independently.   It specifically did not contemplate the procurement of financing by her parents.

104.  Plaintiff learned, on or about May 15, 2007, that a major source of Ms. Kunda's income was illicit gambling proceeding.

105.  Plaintiff would not have agreed to the contract of sale, were it clear that Ms. Kunda would need to misrepresent or conceal her source of income, or depend upon her parents to procure financing, were the true source of her business and personal income known.

106.  Defendant Kunda materially breached the contract of sale by not procuring financing independently, based upon her own sources of income.  Moreover, it is now clear she could have never procured independent financing because of the illegal nature of her business enterprise.

107.  Plaintiff was damaged by Ms. Kunda's breach, inasmuch as she now occupies land that formerly was his, possession of which he seeks to rescind, to be restored to him and his family.

WHEREFORE, Plaintiffs, Douglas E. and Debra Willard, respectfully pray this Honorable Court for the following relief:

a)  Rescission of the contract of sale for the land in question;

b)  Restoration of the property to Mr. and Mrs. Willard, by order of court, with title in the property as tenants by the entireties;

c)  An award of attorney's fees for the prosecution of this action; and for

d)  Such other and further relief as their cause, the interests of justice, and the scope of this Honorable Court's discretion may permit or require.

## —**REQUEST FOR JURY TRIAL**

Plaintiffs respectfully request a trial of this action by jury.


Respectfully submitted,


  __/s/  William F. Hickey III_____
  William F. Hickey III, Federal Bar ID # 27341

Law Office of William F. Hickey, LLC
139 West Main Street
Elkton, MD 21921
Telephone:    410.620.5077
Telefax:    410.620.5033
Email: wfhickey@hickey-law.net


___/s/ Philip J. Sweitzer_____
Philip J. Sweitzer, Federal Bar ID# 29239
5950 Symphony Woods Road, Suite 200
Columbia, MD 21044
Telephone:    443.510.6055
Telefax:    443.276.6355
Email: pjsweitzer@gmail.com

<u>CERTIFICATE OF SERVICE</u>

    This is to certify that on July 14, 2010, a true and correct copy of the foregoing Second Amended Complaint, and attached Exhibit and a red-lined comparison copy was sent by this Court's electronic filing system, as well as by first class, pre-paid U.S. Mail to:

Stephanie A. Gallagher, Esq.     David Matthew Wyand, Esq.
Levin Gallagher, LLP     Rosenberg Martin Greenberg, LLP
Attorneys at Law     25 South Charles Street
250 West Pratt Street     Baltimore, MD 21201
Suite 1300
Baltimore, MD 21201


_____
Philip J. Sweitzer