IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS E. WILLARD, et al.
Plaintiffs,

v.          Civil No. JFM-10-326

KAREN KUNDA, et al.
Defendants

******

MEMORANDUM

Plaintiffs Douglas and Debra Willard, and Whitetail Holdings, LLC, have brought this action against Karen Kunda, Adam Kunda, Hack's Point General Store, Inc., Nancy Holmquist, and Wayne Holmquist ("the Kunda defendants"), as well as Cecil Bancorp., Inc., Cecil Bank, Charles F. Sposato, Sr., Mary B. Halsey, Sandra D. Feltman, and Anthony Moss ("the Cecil Bank defendants"). Invoking this Court's federal question jurisdiction, in Count I plaintiffs allege a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, for which 18 U.S.C. § 1964 provides civil remedies.[1] In addition, plaintiffs assert various state law claims.[2] Defendants have moved to dismiss with prejudice the RICO count for

---

[1] Plaintiffs have alleged an additional federal claim for "Violations of 15 U.S.C. § 1681—Fair Credit Reporting Act," as Counts VI-IX, without explanation as to how the allegation is divided into four separate Counts. Plaintiffs do not state which provision of the Fair Credit Reporting Act ("FCRA") they believe defendants violated. They cite to 15 U.S.C. § 1681 only, which is the congressional findings and statement of purpose for the Act. I think it is fair to assume from the Complaint, in which plaintiffs claim that "Defendant, Cecil Bank, erroneously and with malice reported the Plaintiffs in default on their mortgage . . . to the major three credit reporting agencies . . . ." (Compl. ¶ 83) that plaintiffs intended to allege that Cecil Bank violated § 1681s-2(a), which prohibits furnishers of information from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a) (2006). However, the statutory language makes plain that there is no private right of action for violations of § 1681s-2(a). Subsection (c) of § 1681s-2 states that the two sections of the FCRA that establish a private right of action—§ 1681n (willful noncompliance) and §1681o (negligent noncompliance)—"do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder." 15 U.S.C. § 1681s-2(c). Accordingly, plaintiffs' claims under the FCRA must be dismissed.

[2] Count II alleges Civil Conspiracy; Counts III-V are absent from plaintiffs' Second Amended Complaint. Count X alleges breach of fiduciary duty, and the curious Count numbering resumes with Counts XI-XII, which allege Fraud

1

failure to state a claim. Defendants' motion is granted and I decline to exercise supplemental jurisdiction over the remaining state law claims.

I. **Statement of Facts**

The facts, as alleged by the plaintiffs, are as follows.[3] Plaintiff Douglas Willard owns a tract of agricultural land he has been preparing to market as a residential development in Cecil County, Maryland. (Compl. ¶ 10.) Mr. Willard filed for Chapter 13 bankruptcy in April of 2010, (*Id.* ¶ 35), after defendant Cecil Bank instituted foreclosure proceedings against Mr. Willard in February 2010 (*Id.* ¶¶ 32-33). Mr. Willard claims that the Kunda defendants and Cecil Bank defendants worked in concert to bankrupt him so that Cecil Bank could obtain his real property. (*Id.* ¶ 5.)

*A. Kunda Defendants*

Mr. Willard was formerly involved in a romantic relationship with Ms. Kunda, who operated Hack's Point General Store in Earleville, Maryland. (*Id.* ¶ 2.) Mr. Willard alleges that Ms. Kunda deceived him into acting as a guarantor on a line of credit extended to Ms. Kunda by Cecil Bank. (*Id.* ¶ 3.) Ms. Kunda achieved this deception by assuring Mr. Willard that Hack's Point's revenue was legal when, in fact, much of Hack's Point's revenue was derived from illegal gambling machines. (*Id.* ¶ 2.) The complaint alleges that Mr. Willard was asked to guarantee the loan to Ms. Kunda as part of the defendants' plan to ensure that Mr. Willard was involved in financing a criminal enterprise, thus limiting his ability to extricate himself for fear of criminal prosecution. (*Id.* ¶ 36.) According to Mr. Willard, as a result of the guaranty, his

---

in the Inducement, and Counts XIII-XIV, which allege Tortious Interference with Prospective Advantage. Finally, Count XV alleges Breach of Contract.

[3] This Court considers only the information alleged in the Complaint in ruling on the Kunda defendants' and Cecil Bank defendants' Motions to Dismiss. None of the affidavits filed by plaintiffs as "supplemental" opposition are considered, as the Motions to Dismiss have not been converted to motions for summary judgment.

personal credit was impaired and he was unable to refinance the mortgage loan he had obtained from defendant Cecil Bank on the Cecil County real property. (*Id.* ¶ 35.)

### B. Cecil Bank Defendants

In early 2005, Mr. Willard obtained a mortgage loan from Cecil Bank, secured by the Cecil County real property. (*Id.* ¶ 25.) According to Mr. Willard, Cecil Bank did not think the property was suitable for development initially. (*Id.* ¶ 26.) Once the Cecil Bank officers discovered that Mr. Willard had obtained the environmental studies necessary to develop the land, the bank, with knowledge of Hack's Point General Store's illegal operations, approached Mr. Willard to enlist him as guarantor of a loan to Ms. Kunda. (*Id.*) When Mr. Willard executed the personal guaranty, he claims that he was misled by Cecil Bank personnel to believe that he was acting as a guarantor for $100,000, not the full loan amount of $570,000. (*Id.* ¶ 27.) Further, he claims the indemnity deed of trust is a forgery and a fraud. (*Id.*)

Mr. Willard alleges that Cecil Bank knew of the illegal gambling machines at Hack's Point through a bank employee, Chrissy Biggs, whose sixteen-year-old daughter worked at Hack's Point. (*Id.* ¶ 4.) Cecil Bank allegedly understated the value of Ms. Kunda's business, knowing that she was involved in a relationship with Mr. Willard and would require a guarantor on the line of credit Cecil Bank extended to her. (*Id.* ¶ 53.) According to the Complaint, Cecil Bank "entrap[ped] [Mr. Willard] in a financing transaction whose entire basis was to fund a criminal enterprise, such that he would be inextricably tied to the institution for all future financing . . . . By guaranteeing his failure to complete the development of the unimproved plat for residential development, it could swoop in predatorily . . . and take the project for facile resale at auction." (*Id.*)

## II. Motion to Dismiss RICO Claim

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

"To state a civil RICO claim, a plaintiff must allege that the defendants engaged in, or conspired to engage in, a '*pattern* of racketeering activity.'" *US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citing 18 U.S.C. § 1962). RICO defines the term "racketeering activity" in § 1961 as "any act or threat involving" specified state-law crimes, any act indictable under various specified federal statutes, and certain federal offenses. 18 U.S.C. § 1961(1) (2006). A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Plaintiffs' complaint fails to state a plausible claim of "racketeering activity," let alone a "pattern" of such activity.

### A. *Plaintiffs Fail to Allege Predicate Acts Constituting "Racketeering Activity"*

A generous reading of the Second Amended Complaint reveals three possible predicate acts: (1) Gambling (Compl. ¶ 34), (2) Money Laundering (*Id.* ¶¶ 44-47), (3) Mail or Wire Fraud (*Id.* ¶ 66). Not one of these predicate acts is alleged with "more than labels and conclusions." *See Twombly*, 550 U.S. at 555.

1. Gambling

"Illegal Gambling Businesses," as defined by 18 U.S.C. § 1955, constitute "racketeering activity" under RICO. 18 U.S.C. § 1961(1). The Second Amended Complaint is rife with references to an "illegal gambling operation," but plaintiffs fail to provide any facts describing the way in which Ms. Kunda's alleged gambling activity violated state law or § 1955. In fact, according to plaintiffs, Mr. Willard reported the alleged "illegal gambling operation" to "the appropriate regulatory authorities in mid-2007," (Compl. ¶ 29), yet the "illegal gambling operation" was allowed to continue until "the date of the filing of the instant Complaint" (*id.* ¶ 46). Based on these facts, plaintiffs have not stated a plausible claim of an "illegal gambling operation." Rather, plaintiffs have repeated a legal conclusion—that defendants ran an "illegal gambling operation"—throughout the Second Amended Complaint without any specific factual allegations supporting this claim.

2. Money Laundering

"Racketeering activity" includes "laundering of monetary instruments," as defined by 18 U.S.C. § 1956. 18 U.S.C. § 1961(1). The Second Amended Complaint alleges that the Cecil Bank defendants "knowingly approved and accepted the deposit of funds acquired through Defendants Kunda [sic] illegal gambling activity, and – as such – became a vehicle for laundering such illegal cash proceeds. . . . The Cecil Bank Defendants concealed the illegal source of Ms. Kunda's gambling proceeds." (Compl. ¶ 46.) Under § 1956, a party engaged in money laundering must know "that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," and "conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity. . . ." 18 U.S.C. §1956(a). Setting aside the issue of whether knowledge of any of the activities that

occurred at Hack's Point General Store (lawful or otherwise) can be imputed to Cecil Bank because a Cecil Bank employee's teenage daughter worked at Hack's Point, plaintiffs have failed to allege "specified unlawful activity" as defined in § 1956(c)(7). Accordingly, plaintiffs have not stated a plausible money laundering claim.

    3. Mail or Wire Fraud

Mail and wire fraud, as defined by 18 U.S.C. §§ 1341, 1343, respectively, constitutes "racketeering activity" under RICO. 18 U.S.C. § 1961(1). Importantly, "[w]hen mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b)." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009). A complaint alleging fraud must plead with particularity, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citing to 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1297 (2004)). Plaintiffs allege only that "[u]se of the United States mails or wire services to process loan applications, facilitate loans, and the use of interstate federal banking system to launder illegal gambling proceeds constitutes violations of 18 U.S.C. §§ 1341 and 1343, in that, both separately and in the aggregate, constitute a scheme to defraud." (Compl. ¶ 66.) This statement does not contain a single factual allegation of mail or wire fraud. Plaintiffs have failed to meet the pleading standard for fraud imposed by Rule 9(b).

### B. Plaintiffs Fail to Allege a "Pattern of Racketeering Activity"

To demonstrate a pattern of racketeering activity, a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The "pattern" requirement

thus requires that the predicate acts are both "related" and "continuous." Even assuming that plaintiffs' Complaint contained sufficient allegations of predicate acts, plaintiffs have not pled a "pattern of racketeering activity."

Predicate acts are "related" if they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 240 (quoting 18 U.S.C. § 3575(e)). Both the first predicate act, running an "illegal gambling operation," and the third predicate act, "mail or wire fraud," were allegedly committed by Ms. Kunda. The second predicate act, money laundering, was allegedly committed by the Cecil Bank defendants. Plaintiffs allege that through these predicate acts "Defendants engaged in a related pattern of activity within Cecil County, Maryland . . . they engaged in a commercial loan transaction that was designed to suppress the illegal purpose of the financing transaction and procure by fraud Mr. Willard's participation in that scheme for the purpose of 'trapping' him as a participant in the illegal gambling operation" with the ultimate goal of "ensur[ing that] Mr. Willard incurred over half a million dollars in debt liability . . . so the Cecil Bank Defendants could swoop in and take his real property asset on the cheap . . . ." (Compl. ¶ 5.)

In order to find that the predicate acts of Ms. Kunda and the Cecil Bank defendants were related, Ms. Kunda would have had to have agreed with the Cecil Bank defendants to understate the value of her business, necessitating the guaranty executed by Mr. Willard. The Second Amended Complaint does not contain an allegation of such an agreement. Rather, the Second Amended Complaint suggests that the predicate acts were related insofar as the Cecil Bank defendants knew of Ms. Kunda and Mr. Willard's relationship, knew that Ms. Kunda ran an "illegal gambling operation" through a Cecil Bank employee's sixteen-year-old daughter who

worked at Hack's Point, wanted Mr. Willard's real property, and thus hatched a scheme to undervalue Ms. Kunda's business, knowing that Mr. Willard would serve as guarantor. These allegations do not demonstrate that the alleged predicate acts were "related," but that Cecil Bank simply knew of Ms. Kunda's "illegal gambling operation." That is, the predicate acts do not have similar purposes, results, victims, or methods of commission. *See H. J. Inc.* 492 U.S. at 240. Rather, according to the plaintiffs, the Cecil Bank defendants operated with knowledge of the Kunda defendants "illegal gambling operation," but otherwise acted independently of the Kunda defendants to defraud Mr. Willard. Even if plaintiffs had sufficiently pled predicate acts of "racketeering activity," they have not demonstrated that the acts are "related."

In addition, there is no argument that the alleged predicate acts were "continuous." The continuity requirement stems from Congress's concern with "long-term criminal conduct," *id.* at 242, and demonstrates Congress's desire to limit RICO's application to "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citations omitted). Continuity is defined as either "a closed period of *repeated* conduct, or [] past conduct that by its nature projects into the future with a threat of *repetition*." *Id.* at 683-84. In the instant case, plaintiffs have alleged a single scheme to defraud Mr. Willard. This is neither repeated conduct nor past conduct that threatens to continue in the future.

In sum, plaintiffs have failed to allege a plausible claim of either "racketeering activity," or a "pattern" of such activity. In addition to dismissing plaintiff's RICO claims for failure to state a claim upon which relief can be granted, I decline to exercise supplemental jurisdiction

over the state law claims that plaintiffs have appended to their RICO claim.[4] *See* 28 U.S.C. § 1367(c)(3) (2006).

A separate order effecting the rulings made in this memorandum is being entered herewith.

Date: November 3, 2010         ___/s/_____
                                          J. Frederick Motz
                                          United States District Judge

---

[4] This ruling renders moot Plaintiffs' Motion for Sanctions for Spoliation of Documentary and/or Tangible Evidence and to Enjoin Proposed Sale of Hack's Point General Store.